UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES WILLIAMS, JR.,

                                        Plaintiff,

v.                                                    5:24-cv-0573
                                                     (DNH/TWD)

ATKINS, et al.,

                                        Defendants.
_____

APPEARANCES:                                OF COUNSEL:

CHARLES WILLIAMS, JR.
*Plaintiff, pro se*
4092
Cayuga County Jail
7445 County House Road
Auburn, NY 13021

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

I.      **INTRODUCTION**

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Charles Williams, Jr. ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983.  Dkt. No. 1.

Plaintiff, who is currently confined at the Cayuga County Jail, has not paid the filing fee for this

action and seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 2, 3.

II.     **IFP APPLICATION**

        "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[1]

## III.    BACKGROUND

Plaintiff alleges, on or about May 19, 2021, he entered an "all American mart" store with four others.  Dkt. No. 1 at 6-7.[2]  Upon entering the establishment, he "was assaulted severely with pepper spray, a knife, a baton, fist, brass knuckles and a tazor by store owner and two (2) of his employees."  *Id.* at 6.  The "Auburn Police Department . . . responded later than anticipated following a 911 call and the state police arrived sooner, despite A.P.D. headquarters being located directly across the street from" the store.  *Id.* at 7.

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On or about June 20, 2021, Plaintiff was charged with assault in the second degree and criminal possession of a weapon in the third degree. *Id*. On or about June 25, 2021, "Plaintiff attended a preliminary hearing at the Cayuga County City Court building." *Id*. at 8. "In the court's corridor officer Atkins, head investigator of said case was clearly overheard directing and orchestrating several members of A.P.D. to remember to say, 'he had a baton in his hand' while demonstrating a downward swing." *Id*. "Officer Atkins informed Spinelli, Rivers, Augello, amung others to follow a script, and plaintiff was unsuccessful at his hearing." *Id*. at 8-9.

Following the hearing, Plaintiff remained in custody at the Cayuga County Jail. *Id*. at 9. On or about August 11, 2021, "Plaintiff attended the Grand Jury against the advice of his assigned attorney Jarrod Smith." *Id*. "Multiple A.P.D. members testified before the grand jury while conspiring with Jon E. Budlemann to fabricate an entire case, falsely accusing plaintiff of previously mentioned trumped up offenses." *Id*. at 9-10. "Budlemann emphasized to the members of the grand jury that plaintiff was acting in retaliation and assaulted the store owner with a weapon, ie. baton" and "revealed enlarged photoshopped pictures of plaintiff with a baton in hand, yet said hand attached to plaintiff's arm & wrist was apparently white (of caucasian origin) moreover, the sleeve was blue, consistent to the blue shirt in which said store owner was wearing." *Id*. at 10-11. The prosecutor also "failed to produce the video footage of the 'all American mart', in light of said material evidence having exonerating potentiality." *Id*. at 11.

Plaintiff alleges Budlemann and "A.P.D.'s 'computer technician' produced self manufactured still frames (ie. altered images) to present his case." *Id*. at 11-12. Therefore, "clearly the defendants maliciously conspired to frame plaintiff, unethically for crimes never committed." *Id*. at 12. Additionally, "one of the registered nurses at upstate university hospital

downsized plaintiff's injuries as 'superficial' wounds to appease and corroborate Atkins intent to charge him." *Id*.

"After viewing Emily Douglass' video, which captures the commencement of this bloody incident the falsified photographs presented by the defendants, along with plaintiffs testimony a 'no bill' was declared on August 25, 2021. Soon thereafter, Plaintiff was released from Cayuga County Jail on or around August 30, 2021." *Id*. at 13. However, as a result of this incident, "Plaintiff has lost employment at giovanni food where his payrate averaged $900.00 per week." *Id*. at 14. The complaint also includes a document from Upstate University Hospital indicating Plaintiff was assessed for injuries to the head, eyes, chest/lungs, abdomen, hand, and back/spine on May 19, 2021. *See id*. at 15.

The complaint contains seven claims: (1) failure to protect and serve, (2) false imprisonment, (3) malicious prosecution, (4) defamation of character, (5) false arrest, (6) emotional suffering, and (7) falsifying documentation, filing false instruments, and false reports via producing untrue accusations. *Id*. at 16-19. Plaintiff has identified 42 U.S.C. § 1983 as the basis of his claims and listed the following individuals as defendants: (1) Atkins, police officer/detective, (2) Augello, police officer/detective, (3) Rivers, police officer/detective, (4) Spinelli, police officer (5) Jon Doe, computer technician officer, (6) Jane Doe, registered nurse, (7) Jon Budlemann, district attorney. *Id*. at 2-5. He requests thirteen million dollars in relief, as well as "a protective order from retaliation from districts attorney office & A.P.D. . . . ." *Id*. at 20.

## IV.  LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).[3]  This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

---

[3] *See also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.").

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)); *see also Bennett v. Bailey*, No. 5:20-CV-0903 (GTS/ATB), 2020 WL 5775940, at *2 (N.D.N.Y. Aug. 17, 2020) ("The requirement that the defendant acted under 'color of state law' is jurisdictional.") (citation omitted), *report and*

*recommendation adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)) (additional citation omitted).

### A.  Auburn Police Department Officers

The Court liberally construes Plaintiff's complaint as alleging false arrest, false imprisonment, falsified evidence, and malicious prosecution claims against the Auburn Police Officers Atkins, Augello, Rivers, Spinelli, and a John Doe computer technician.

A § 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995)).  Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Jenkins v. City of New York*, 478 F.3d 76, 88 n. 10 (2d Cir. 2007) ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest.") (citation omitted).

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins*, 478 F.3d at 84 (citing *Weyant*, 101 F.3d at 852).  Accordingly, to state a claim for false arrest and imprisonment, "a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotations omitted).  "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment

ends once the victim becomes held *pursuant to such process*—when, for example, he is bound

over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389 (emphasis in original).

"Thereafter, unlawful detention forms part of the damages for the entirely distinct' tort of

malicious prosecution . . . ." *Id*. at 390 (internal quotations and citations omitted).

      "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a

plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish

the elements of a malicious prosecution claim under state law . . . ." *Manganiello v. City of New

York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  To support a malicious

prosecution claim "[u]nder New York law, a plaintiff must establish . . .  (1) the initiation or

continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual

malice as a motivation for defendant's actions." *Butler v. Hesch*, 286 F. Supp. 3d 337, 355

(N.D.N.Y. 2018) (internal quotations omitted) (citing *Manganiello*, 612 F.3d 149, 161; *Dufort v.

City of New York*, 874 F.3d 338, 350 (2d Cir. 2017)).

      Further, "[i]t is firmly established that a constitutional right exists not to be deprived of

liberty on the basis of false evidence fabricated by a government officer." *Zahrey v. Coffey*, 221

F.3d 342, 355 (2d Cir. 2000) (citing *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d

Cir. 1997)) (additional citations omitted).  "To support this sort of due process claim, a plaintiff

must show, *inter alia*, that an investigating official fabricated evidence that caused a deprivation

of life, liberty, or property." *Westley v. Burdo*, No. 8:16-CV-1102 (NAM/DJS), 2018 WL

6703564, at *4 (N.D.N.Y. Dec. 20, 2018) (citing *Garnett v. Undercover Officer C0039*, 838 F.3d

265, 279 (2d Cir. 2016)).

Plaintiff alleges, at his preliminary hearing, Officer Adkins directed Auburn Police Department members to state Plaintiff "'had a baton in his hand . . . '" during the incident, which was not true. *See* Dkt. No. 1 at 8. He also claims an Auburn Police Department computer technician manufactured or altered images to depict Plaintiff with a baton in his hand, to support the assault and criminal possession of a weapon charges against him. *See id*. at 10-11. Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the undersigned recommends the Court find Plaintiff's false arrest, false imprisonment, and malicious prosecution claims against Officer Adkins and his falsified evidence,[4] false arrest, false imprisonment, malicious prosecution claims against the John Doe computer technician survive *sua sponte* review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

By contrast, Plaintiff's complaint fails to explain in what allegedly unlawful actions Officers Augello, Rivers, and Spinelli engaged. His sole contention concerning these individuals is his conclusory assertion that "*Officer Atkins* informed Spinelli, Rivers, Augello, amung others to follow a script . . . ." *See* Dkt. No. 1 at 8-9 (emphasis added).[5] In its current state, Plaintiff's complaint is insufficient to provide Augello, Rivers, and Spinelli notice of the claims against

---

[4] Plaintiff's seventh claim alleges, "falsifying documentation, filing false instruments, and false reports via producing untrue accusations, making a plethora of fabricated reports and using photoshopped images with plaintiffs using a baton was egregious & unethical." Dkt. No. 1 at 19-20. However, his factual contentions fail to identify the author or content of any such fabricated reports. Therefore, insofar as he seeks to assert a claim based on the falsification of evidence other than the images allegedly created by John Doe in violation of his federal due process rights, the undersigned recommends dismissal of such a claim.

[5] Plaintiff also states "multiple A.P.D. members testified before the grand jury" in an effort "to fabricate an entire case, falsely accusing plaintiff" of assault and criminal possession of a weapon, Dkt. No. 1 at 9-10, but he does not specify which members.

them.  Accordingly, the undersigned recommends dismissal of the complaint as to these

defendants without prejudice and with leave to amend.  *See Ying Li v. City of New York*, 246 F.

Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was

involved in the unlawful conduct are insufficient to state a claim.") (citations omitted); *see also*,

*e.g.*, *Ali v. Oneida Cnty. District Attorney*, No. 6:23-CV-1115 (GTS/ATB), 2023 WL 7124513,

at *6 (N.D.N.Y. Oct. 30, 2023) (recommending dismissal of the plaintiff's claims against police

officers where he "failed to articulate how each of the named law enforcement defendants was

individually, personally involved in the purported interrogations, or any other actions, that led to

the alleged fabrication of evidence."), *report and recommendation adopted*, 2023 WL 8798116

(N.D.N.Y. Dec. 20, 2023).

### B.  Jane Doe Registered Nurse

The sole factual allegation against defendant "Jane Doe Registered Nurse" is Plaintiff's

claim that "one of the registered nurses at Upstate University Hospital downsized Plaintiffs

injuries as 'superficial' wounds to appease and corroberate Atkins intent to charge him."  Dkt.

No. 1 at 12.  Assuming, *arguendo*, Jane Doe acted under color of state law, Plaintiff fails to

explain, and the Court is unable to glean from his complaint, how Jane Doe's conduct violated

any right, privilege, or immunity secured by the U.S. Constitution.  Therefore, the undersigned

recommends dismissal of the complaint as to Jane Doe for failure to state a claim without

prejudice and with leave to amend.

### C.  District Attorney Jon Budelmann

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial

activities 'intimately associated with the judicial phase of the criminal process.'"  *Barr v.*

*Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430

(1976)).  This immunity encompasses "virtually all acts, regardless of motivation, associated

with [the prosecutor's] function as an advocate."  *Hill v. City of New York*, 45 F.3d 653, 661 (2d

Cir. 1995) (internal quotations and citation omitted).  Absolute immunity applies when a

prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process,

"involves the exercise of discretion."  *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011)

(citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring

charges and presenting a case to a grand jury or a court, along with the tasks generally

considered adjunct to those functions, such as witness preparation, witness selection, and issuing

subpoenas."  *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (citing *Imbler*, 424

U.S. at 431 n. 33); *see also Flagler*, 663 F.3d at 547 (explaining, "the Supreme Court has found

prosecutors absolutely immune from suit for alleged misconduct during a probable cause

hearing, in initiating a prosecution, and in presenting the State's case . . . [but] withheld absolute

immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press

conference, or acting as a complaining witness.").  "[O]nce a court determines that challenged

conduct involves a function covered by absolute immunity, the actor is shielded from liability for

damages regardless of the wrongfulness of his motive or the degree of injury caused . . . ."

*Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474

U.S. 193, 199-200 (1985)).

Here, Plaintiff alleges District Attorney Jon Budelmann conspired with members of the

Auburn Police Department "to fabricate an entire case" against him, and presented testimony and

photographs to a grand jury.  Dkt. No. 1 at 10-12.  These allegations fall squarely within the

scope of prosecutorial immunity.  *See*, *e.g.*, *Wilson v. Cnty. of Onondaga*, No. 5:20-CV-1489

(GTS/TWD), 2021 WL 5971316, at *7 (N.D.N.Y. Apr. 21, 2021) ("To the extent Plaintiff

claims" various Assistant District Attorneys and District Attorneys "knew at the time of

Plaintiff's case being presented to the grand juries that evidence and testimony was false and,

nevertheless, conspired to present the same, such allegations relate to their roles in presenting the

case to the grand jury; conduct for which they are entitled to absolute prosecutorial immunity.")

(citations omitted), *report and recommendation adopted*, 2021 WL 5967130 (N.D.N.Y. Dec. 16,

2021).  Therefore, the undersigned also recommends dismissal of the complaint with prejudice,

insofar as Plaintiff seeks to hold District Attorney Jon Budelmann liable under 42 U.S.C. § 1983.

### D.  Additional Claims

Plaintiff's also purports to assert claims for "failure to protect and serve," "defamation,"

and "emotional suffering."  Dkt. No. 1 at 16-19.  For the reasons stated below, the undersigned

recommends dismissal of these claims without prejudice and with leave to amend.

In support of his failure to protect claim, he avers "on May 19, 2021 members of A.P.D.

responded late to an incident which left plaintiff severly injured A.P.D. members arrested and

charged plaintiff, when plaintiff is the victim."  *Id*. at 16.  "However, a police officer's alleged

failure to protect one citizen from another does not violate due process, absent the existence of a

special relationship between the police officer and the victim such as a custodial relationship

(which is not present here)."  *Israel v. City of Syracuse*, No. 5:21-CV-0915 (DNH/ML), 2021

WL 7161914, at *6 (N.D.N.Y. Dec. 9, 2021) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc.

Servs.*, 489 U.S. 189, 195-96 (1989); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d

Cir. 1993)), *report and recommendation adopted*, 2022 WL 18587 (N.D.N.Y. Jan. 3, 2022).

Accordingly, the undersigned recommends dismissal of Plaintiff's failure to protect claim.

In support of his defamation claim, Plaintiff avers his "name was smeared negatively throughout public records, media, word of mouth & statements.  Plaintiff lost his job at giovanni food, lost of friends and family relationships over his reputation being tarnished by above captioned defendants."  Dkt. No. 1 at 18.  "Generally, defamation is an issue of state, not of federal constitutional law."  *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (citations omitted).

> Under limited circumstances, a constitutional violation may be found when the defamation is committed by a government official . . . . A defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 when a plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest."

*Gerrard v. Burns*, No. 7:14-CV-1235, 2015 WL 1534416, at *3 (N.D.N.Y. Apr. 6, 2015) (citing *Vega*, 596 F.3d at 81).

> To prevail on a "stigma plus" claim, a plaintiff must show (1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.

*Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citations omitted).  "Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property . . . and the termination of a plaintiff's *government* employment . . . ."  *Id.* (emphasis added) (citing *Greenwood v. New York, Office of Mental Health*, 163 F.3d 119, 124 (2d Cir.1998); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)).  "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine."  *Id.* (citing *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).  Here, even assuming, *arguendo*, the presence of defamatory statements, Plaintiff has not alleged harms "in addition to" the alleged deprivation, but only the "deleterious effects" of that defamation.  *See id.*

at 39.  Therefore, even afforded a liberal construction, Plaintiff has failed to state a defamation

claim under § 1983.

Further, Plaintiff has failed to sufficiently plead claim of defamation under state law.[6]

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written

defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault,

(4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Palin v.*

*New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted).

> The elements of a cause of action for slander under New York law
> are (i) a defamatory statement of fact, (ii) that is false, (iii) published
> to a third party, (iv) "of and concerning" the plaintiff, (v) made with
> the applicable level of fault on the part of the speaker, (vi) either
> causing special harm or constituting slander per se, and (vii) not
> protected by privilege.

*Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (citations omitted).  Plaintiff's conclusory

assertion that his "name was smeared negatively throughout public records, media, word of

mouth & statements" by the defendants,[7] without more, is insufficient to state a claim under state

law.  In any event, because the complaint relates to an incident which occurred in 2021, any

defamation claim under New York law is likely time barred.  *See Israel*, 2021 WL 7161914, at

*7 n.5 ("The statute of limitations for defamation claims under New York law is one year.")

(citing N.Y. C.P.L.R. § 215(3)).

Plaintiff's final remaining claim alleges "emotional suffering plaintiff has been battling

mental anguish, nightmares, paranoia, distrust of law enforcement & society."  Dkt. No. 1 at 19.

"There is no recognized claim for intentional infliction of emotional distress [("I.I.E.D.")] under

---

[6] "Generally, spoken defamatory words are slander; written defamatory words are libel."  *Albert
v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001).
[7] *See* Dkt. No. 1 at 18.

14

section 1983." *Schisler v. City of Rome*, No. 6:17-CV-0312 (GTS/ATB), 2017 WL 1418296, at

*4 (N.D.N.Y. Mar. 22, 2017) (citation omitted), *report and recommendation adopted*, 2017 WL

1411533 (N.D.N.Y. Apr. 20, 2017).  Alternatively, to the extent Plaintiff seeks to pursue this

claim under New York law, "the New York Court of Appeals . . . has cautioned that a claim for

IIED may not be sustainable 'where the conduct complained of falls well within the ambit of

other traditional tort liability.'"  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir.

2014) (citing *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)).  Here, Plaintiff's assertion of

emotional suffering falls "within the ambit of his claims" for false arrest, false imprisonment,

falsified evidence, and malicious prosecution, therefore, the undersigned recommends dismissal

of his emotional distress claim.  *See*, *e.g.*, *Delaney v. City of Albany*, No. 1:18-CV-1259

(LEK/ATB), 2019 WL 125769, at *5 (N.D.N.Y. Jan. 7, 2019) ("The conduct of which Plaintiff

complains falls within the ambit of his claims for false arrest and unreasonable search;

accordingly, the Court dismisses the related IIED claim.") (citing *Yang Feng Zhao v. City of New

York*, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) ("In this case the alleged conduct fits well

within the traditional tort theories of false arrest, malicious prosecution, and assault and battery.

Accordingly, the claim of intentional infliction of emotional distress will not fly."); *Murphy v.

City of Rochester*, 986 F. Supp. 2d 257, 271 (W.D.N.Y. 2013) ("the allegedly outrageous

conduct complained of by [the plaintiff] falls within the scope of the other traditional torts he has

pleaded (i.e., false arrest; malicious prosecution; abuse of process; negligent hiring, supervision

and training; and defamation by libel and slander).").

## VI.   CONCLUSION

   **WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **ACCEPTED** for filing to the extent it asserts the following claims: (1) false arrest against defendants Atkins and John Doe; (2) false imprisonment against defendants Atkins and John Doe; (3) malicious prosecution against defendants Atkins and John Doe; and (4) falsified evidence against defendant John Doe; and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as to defendant Jon Budelmann; and it is further

**RECOMMENDED** that except as to the foregoing, the remaining claims asserted in the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

---

[8] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: June 11, 2024
        Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1]    At the time the action was originally filed,
the Honorable Leonard B. Sand, United States
District Judge, granted plaintiff's application for *in
forma pauperis* status based on plaintiff's *ex parte*
submission (Docket Item 1). Although the present
application seeking to revoke plaintiff's *in forma
pauperis* status is non-dispositive, I address it by
way of a report and recommendation to eliminate
any appearance of a conflict between the decision
of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2]  By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers,
and it has not been docketed by the Clerk of the
Court. The form will be docketed at the time this
Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the Scoggy action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [sic ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." Merriweather v. Reynolds, 586 F.Supp.2d 548, 552 (D.S.C.2008), citing Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir.2003) and White v. Colorado, 157 F.3d 1226, 1231–32 (10th Cir.1998); see also Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

    Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

    Nelson v. Scoggy, supra, 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. Conclusion

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's in forma pauperis status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775940

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 22 of 81

2020 WL 5775940
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT and
Kristina M. McDonald, Plaintiffs,
v.
Don BAILEY and Route 11 Motorsports, Defendants.

5:20-CV-903 (GTS/ATB)
|
Signed 08/17/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD,
Plaintiffs Pro Se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint
brought pursuant to 42 U.S.C. § 1983, filed by plaintiffs
Andrew S. Bennett and Kristina M. McDonald. (Dkt. No.
1). Plaintiffs have also applied to proceed in forma pauperis
("IFP"). [1] (Dkt. No. 2).

[1]    Both plaintiffs have signed the complaint and
the IFP application and are each representing
themselves. Because this court is recommending
dismissal for lack of jurisdiction, the court will not
require plaintiffs to file separate IFP applications.

**I. IFP Application**
Plaintiffs declare in their IFP application that they are unable
to pay the filing fee. (Dkt. No. 2). After reviewing his
application, this court finds that plaintiffs are financially
eligible for IFP status.

However, in addition to determining whether plaintiffs meet
the financial criteria to proceed IFP, the court must also
consider the sufficiency of the allegations set forth in the
complaint in light of 28 U.S.C. § 1915, which provides that
the court shall dismiss the case at any time if the court
determines that the action is (i) frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune
from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
consider whether the complaint lacks an arguable basis in
law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
Dismissal of frivolous actions is appropriate to prevent abuses
of court process as well as to discourage the waste of judicial
resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505
F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to
show liberality toward *pro se* litigants, and must use extreme
caution in ordering *sua sponte* dismissal of a *pro se* complaint
before the adverse party has been served and has had an
opportunity to respond, the court still has a responsibility
to determine that a claim is not frivolous before permitting
a plaintiff to proceed. *Fitzgerald v. First East Seventh St.
Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that
a district court may dismiss a frivolous complaint *sua sponte*
even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint
must contain sufficient factual matter, accepted as true, to
state a claim that is "plausible on its face." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp.*, 550 U.S. at 555).

**II. Complaint**
Plaintiffs allege that on March 17, 2020, they purchased a
car from the defendant Don Bailey and his company Route
11 Motorsports. (Complaint ("Compl.") ¶ 4 at p.2 (Facts)).
Plaintiffs claim that defendant Bailey gave them a "90 Day
Warranty" which he is not honoring. (*Id.*) Two days after
they purchased the vehicle, the motor began "knocking," and
plaintiffs contacted Don Bailey, who has failed to rectify the
situation. (*See* Compl. *generally* ¶ 4 at pp.3-6). Plaintiffs seek
a full refund of the purchase price of the vehicle and damages
for pain and suffering for a total of $10,500. (Compl. ¶¶ 5-6).

**III. Subject Matter Jurisdiction**

**A. Legal Standards**
**\*2** Federal courts are courts of limited jurisdiction, have
only the power that is authorized by Article III of the
Constitution, and may only preside over cases that fall
within the subject matters delineated by Congress. *Bender v.*

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775940

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 23 of 81

*Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

**B. Application**

**1. Section 1983**

**a. Legal Standards**

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200,

2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

**b. Application**

The defendants in this action are a private individual and what appears to be his car dealership. There is no indication that either of the defendants acts under color of state law. Therefore there is no jurisdiction under section 1983 for the plaintiffs' case. The court realizes that the plaintiffs are pro se and will attempt to determine whether there is any other jurisdictional basis for plaintiffs to bring an action in this court pursuant to federal question or diversity jurisdiction.[2]

[2]   A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

**2. Magnuson-Moss Warranty—Federal Trade Commission Act ("MMWA"), 15 U.S.C. § 2301**

**a. Legal Standards**

*3  The MMWA, is also known as the federal "lemon law." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). The MMWA "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty [or] implied warranty ... [to] bring suit for damages and other legal and equitable relief.' " *Id.* (quoting

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940
Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 24 of 81

15 U.S.C. § 2310(d)(1)). However, the MMWA provides for federal jurisdiction under certain circumstances. *Id.* MMWA claims may be brought in federal court only if the amount in controversy meets or exceeds $50,000 (exclusive of interests and costs), computed on the basis of all claims in the action. *Id.* (citing § 2310(d)(3)(B)).

**b. Application**

Plaintiffs in this action allege that the value of the car was $7,000.00 and their "pain and suffering" was worth another $3,500.00 for a total of $10,500.00 in damages. (Compl. ¶¶ 5-6). Thus, even if plaintiffs could make a claim under the MMWA for the failure of defendants to abide by their warranty, and even if they had cited the appropriate statute, plaintiffs cannot meet the jurisdictional amount for bringing an MMWA claim in federal court.

**3. Contract Claims**

**a. Legal Standards**

Contract actions are generally state law claims, "governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action." *Liana Carrier Ltd. v. Pure Biofuels Corporation*, 672 F. App'x 85, 92 (2d Cir. 2016). Contractual obligations, are inherently creatures of state law. *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767, 1999 WL 4899, at *2 (S.D.N.Y. Jan. 5, 1999) (citing *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115 (1939)). "[A] complaint alleging a violation of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

**b. Application**

Plaintiffs in this case essentially argue that defendant Bailey did not honor his agreement to fix the plaintiffs' car and now does not return their calls or texts. (Compl. ¶ 4 at pp.5-6). As stated above, plaintiffs do not meet the jurisdictional minimum for an MMWA claim. To the extent that plaintiffs

are trying to state a contract claim or a simple warranty claim, there is no jurisdiction in federal court for this action, given the facts of plaintiffs' case. While federal courts decide state law claims, those claims are generally either supplemental to a federal claim [3] or brought under diversity jurisdiction. There are no viable federal claims in this action. Thus, supplemental jurisdiction does not apply. Plaintiffs and defendants are citizens of the same state, and the amount in controversy is less than the jurisdictional amount of $75,000.00. Thus, there is no diversity jurisdiction. Because there is no jurisdiction to decide plaintiffs' claims, I must recommend dismissal.

3    28 U.S.C. § 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**IV. Opportunity to Amend**

**A. Legal Standards**

**\*4** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiffs' causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

**B. Application**

There is no subject matter jurisdiction for plaintiffs to bring this action in federal court. It does not appear that any amendment or additional pleading will cure the defects in jurisdiction. Because there is no subject matter jurisdiction, the court will recommend dismissing the action without prejudice to plaintiffs bringing their claims in the appropriate state court. However, such dismissal should be without the opportunity to amend since plaintiffs will not be able to cure the deficiency in their complaint with better pleading.

**Bennett v. Bailey, Not Reported in Fed. Supp. (2020)**

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 25 of 81

2020 WL 5775940

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' application to proceed IFP (Dkt. No. 2) is **GRANTED ONLY TO THE EXTENT NECESSARY TO FILE THIS ACTION**, and it is

**RECOMMENDED**, that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION, BUT WITHOUT THE OPPORTUNITY TO AMEND**, and it is.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiffs by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775940

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775231

2020 WL 5775231
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT; and
Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY; and Route 11 Motorsports, Defendants.

5:20-CV-0903 (GTS/ATB)
|
Signed 09/28/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD,
Plaintiffs, Pro Se, 1137 Roberts Hollow Road, Lowman, New
York 14861.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se habeas* breach-
of-contract action filed by Andrew S. Bennett and Kristina
M. McDonald ("Plaintiffs") against Don Bailey and Route 11
Motorsports ("Defendants") pursuant to 42 U.S.C. § 1983, is
United States Magistrate Judge Andrew T. Baxter's Report-
Recommendation recommending that Plaintiffs' Complaint
be dismissed without prejudice for lack of subject-matter
jurisdiction pursuant to 28 U.S.C. § 1915 and that such
dismissal should be without prior leave to amend. (Dkt.
No. 3.) Plaintiffs have not filed an objection to the Report-
Recommendation, and the time in which to do so has expired.
(*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Baxter's thorough Report-

Recommendation, the Court can find no clear-error in
the Report-Recommendation. [1] Magistrate Judge Baxter
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiffs'
Complaint is dismissed without prejudice for lack of subject-
matter jurisdiction.

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear-error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a "clear error"
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order to
        accept the recommendation." *Id.*; *see also Batista
        v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
        (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
        permitted to adopt those sections of [a magistrate
        judge's] report to which no specific objection is
        made, so long as those sections are not facially
        erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-
Recommendation (Dkt. No. 3) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is
**DISMISSED without prejudice for lack of subject-matter
jurisdiction.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775231

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Westley v. Burdo, Not Reported in Fed. Supp. (2018)

2018 WL 6703564

2018 WL 6703564
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Quan WESTLEY, Plaintiff,

v.

Arnold J. BURDO, Defendant.

8:16-CV-01102 (NAM/DJS)
|
Signed 12/20/2018

**Attorneys and Law Firms**

Plaintiff Pro Se, Quan Westley, 185 Wortman Avenue, Apt.
14C, Brooklyn, New York 11207.

For Defendants: Barbara D. Underwood, Attorney General
for the State of New York, Omar J. Siddiqi, Assistant Attorney
General, The Capitol, Albany, New York 12224.

**MEMORANDUM-DECISION AND ORDER**

Norman A. Mordue, Senior U.S. District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff *pro se* Quan Westley ("Plaintiff") brings this
action under 42 U.S.C. § 1983 against his former Parole
Officer, Arnold Burdo ("Defendant"), alleging constitutional
violations arising from the revocation of Plaintiff's post-
release supervision, and a related state law defamation claim.
(Dkt. No. 12). Now before the Court is Defendant's motion
for summary judgment on all claims against him, (Dkt. No.
42), and Plaintiff's papers in opposition to the motion. (Dkt.
Nos. 45, 50). For the following reasons, Defendant's motion
is granted.

**II. BACKGROUND**

 **A. Procedural History**
On January 6, 2017, United States Magistrate Judge Daniel
J. Stewart issued a Decision and Order, after screening
Plaintiff's pleadings pursuant to 28 U.S.C. § 1915(e),
directing the Clerk of the Court to amend the Docket
by combining Plaintiff's Amended Complaint (Dkt. No. 7)
with Plaintiff's Second Amended Complaint (Dkt. No. 9)
to become Plaintiff's Third Amended Complaint (Dkt. No.
12). (Dkt. No. 11, pp. 2–3). Judge Stewart concluded that

"[t]hough the facts alleged are wafer thin, it appears to this
Court that Plaintiff is attempting to assert a claim against
Defendant Burdo, his parole officer, for providing false
evidence which resulted in Plaintiff's loss of freedom and
wages." (*Id.*, p. 2).

 **B. Record Before the Court**
With Defendant's motion for summary judgment, Defendant
provided Plaintiff with a copy of the Northern District of
New York's "Notice to Pro Se Litigants Opposing Summary
Judgment." (Dkt. No. 42, pp. 3–4). That notice advised
Plaintiff, among other things, that "[t]he claims you assert
in your Complaint may be dismissed without a trial if you
do not respond to this motion by filing your own sworn
affidavits or other papers as required by Rule 56(e)." (*Id.*) The
notice further states that "[plaintiff] may not oppose summary
judgment simply by relying on the allegations in [plaintiff's]
complaint. Rather, [plaintiff] must submit evidence, such
as witness statements or documents, countering the facts
asserted by the defendant and raising issues of fact for
trial." (*Id.*)

Plaintiff submitted a response in opposition to Defendant's
motion, along with a letter asserting additional factual
allegations that were not previously provided within
Plaintiff's initial pleadings. (Dkt. Nos. 45, 50). Plaintiff's
papers dispute certain facts put forward by Defendant, but
Plaintiff fails to rebut many of the key facts that form the basis
for Defendant's motion.

Under these circumstances, the Court may accept Defendant's
statement of facts as true where appropriate, supported by
the record, and unchallenged by Plaintiff with admissible
evidence. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir.
1996) (reasoning that even *pro se* litigants "should be on
notice from the very publication of Rule 56(e) that a party
faced with a summary judgment motion may not rest upon
the mere allegations or denials of the party's pleading and that
if the party does not respond properly, summary judgment, if
appropriate, shall be entered against him") (quoting *Graham
v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ); *Riehl v.
Martin*, No. 13 Civ. 439, 2014 WL 1289601, at \*5, 2013
U.S. Dist. LEXIS 186610, at \*12 (N.D.N.Y. Dec. 19, 2013)
("Where, as here, a party has failed to respond to the
movant's statement of material facts in the manner required
under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's
statement will be accepted as true (1) to the extent they are
supported by evidence in the record, and (2) the nonmovant,
if proceeding pro se, has been specifically advised of the

2018 WL 6703564

possible consequences of failing to respond to the motion."), *report-recommendation adopted*, 2014 WL 1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014).

**\*2** While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the following facts are largely taken from Defendant's declaration and statement of facts, (Dkt. Nos. 42-6, 42-9), where supported by the record, as well as Plaintiff's submissions in opposition. (Dkt. Nos. 45, 50). The Court construes the facts in the light most favorable to the Plaintiff.

### C. Facts

On or about August 22, 2014, Plaintiff was released on five years' post-release supervision after serving three years of a four-year sentence in state prison for assault in the second degree. (Dkt. Nos. 42-2; 42-4, p. 52:16–20). At all relevant times, Plaintiff was a parolee under the supervision and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 42-9, ¶ 1). Upon his release from prison, Plaintiff agreed to comply with certain mandatory requirements under Plaintiff's Special Conditions of Release to Parole Supervision. (Dkt. No. 42-2). The relevant conditions at issue here were the requirements that Plaintiff: 1) refrain from the use, possession or purchase of alcoholic beverages; and 2) abide by a curfew and to not leave his designated residence after his curfew. (Dkt. No. 42-2, ¶¶ 13a, 13c).

On or about April 15, 2015, Plaintiff was assigned to Defendant Parole Officer Arnold J. Burdo's parole supervision case-load. (Dkt. No. 42-6, ¶ 19). Defendant was required to supervise Plaintiff to ensure that Plaintiff remained in compliance with the conditions of his release, to investigate any alleged parole violations or criminal behavior, and to execute any parole warrants or other warrants issued for Plaintiff's arrest. (Dkt. No. 42-6, ¶ 21).

On May 12, 2015, Defendant performed a curfew check on Plaintiff, where Defendant discovered that Plaintiff was not in his home during curfew hours—a violation of Plaintiff's conditions of release. (Dkt. No. 42-6, ¶ 23). Plaintiff has admitted to violating his required curfew on at least that one occasion. (Dkt. No. 42-4, p. 61:4–7). As a result, Defendant

placed Plaintiff under GPS monitoring using an Electronic Monitoring Unit ("EMU") to track Plaintiff's compliance with the curfew-related conditions of his parole. (Dkt. No. 42-6, ¶¶ 5, 7, 24). The GPS EMU systems transmit information to "Veritracks," a software system that is owned and operated by Satellite Tracking of People, LLC. (*Id.*, ¶ 7). The Veritracks software issues an e-mail alert to the parole officer whenever a parolee has gone beyond the established boundaries set within their curfew hours. (*Id.*, ¶ 16).

Beginning on May 15, 2015, Defendant began receiving alerts and information through DOCCS's tracking system indicating that Plaintiff was violating his curfew. (Dkt. No. 42-9, ¶¶ 7–15). Plaintiff disputes that he violated curfew on many of these occasions. (Dkt. No. 50, pp. 2, 10–11). He also alleges that the GPS unit was not working properly and gave false readings. (Dkt. No. 45, p. 1). On June 18, 2015, Defendant located Plaintiff at 48 South Platt Street in Plattsburgh, New York, where he found Plaintiff and an associate in a parked vehicle. (Dkt. No. 42-9, ¶¶ 19–22). At that time, Defendant suspected that Plaintiff had consumed alcohol in violation of the conditions of Plaintiff's parole. (Dkt. No. 42-6, ¶¶ 40–44). Defendant directed Plaintiff to return to Plaintiff's residence so that Defendant could determine whether there was alcohol at Plaintiff's residence. (*Id.*, ¶¶ 40–44). Upon their arrival at Plaintiff's residence, Defendant could smell alcohol on Plaintiff's breath and subsequently conducted a test which determined Plaintiff's blood alcohol level to be 0.03. (*Id.*, ¶¶ 45–47). Plaintiff admitted to consuming at least one wine cooler earlier in the day. (*Id.*, ¶ 48). At that point, Defendant transported Plaintiff to the Plattsburgh Field Office, where an additional blood alcohol test indicated Plaintiff's blood alcohol level was 0.036. (*Id.*, ¶ 49). Plaintiff was then taken into custody pursuant to a parole warrant and transported to Clinton County Jail. (*Id.*, ¶ 52).

**\*3** On or about June 18, 2015, Defendant prepared a Violation of Release Report, charging Plaintiff with eleven violations of the conditions of his release, including curfew and alcohol-related violations. (Dkt. No. 42-3). On July 15, 2015, Plaintiff appeared with counsel before an administrative law judge at a parole revocation hearing at the Clinton County Jail. (Dkt. No. 42-9, ¶¶ 24–25). At that hearing, Plaintiff pled guilty to Charge 11 of the Violation of Release Report: "On June 18, 2015, at about 12:35 p.m. at 5411 Peru Street in Plattsburgh, NY, parolee Westley violated Condition #13C of his Special Conditions of Release to Parole Supervision when he tested positive and admitted to consuming alcohol." (Dkt. Nos. 42-3, p. 2; 42-5, pp. 4:19–

Westley v. Burdo, Not Reported in Fed. Supp. (2018)
Case 5:24-cv-00573-DNH-TWD   Document 5   Filed 06/11/24   Page 29 of 81
2018 WL 6703564

5:4). All curfew-related parole violations were dismissed
with prejudice. (Dkt. No. 42-5, pp. 4:4–5:8). Consistent
with the joint sentencing recommendation of the parties,
the administrative law judge accepted Plaintiff's guilty plea
and imposed a fifteen-month sentence for the alcohol-related
parole violation. (*Id.*, pp. 5:10–6:8).

In Plaintiff's papers, he alleges that Defendant put "lies" in the
Violation of Release Report regarding the GPS readings and
curfew violations. (Dkt. No. 45, p. 2). Plaintiff further alleges
that "on paper it may say the parole Judge violation was
souly [sic] because I was drinking a [sic] alcohol beverage,
but I know for a fact that it was because of all the lies
he put in the report." (*Id.*). Plaintiff alleges that the curfew
violations were the real reason his parole was revoked. (*Id.*).
In his deposition, Plaintiff testified that he believed Defendant
falsified the GPS tracking data because Defendant "wanted to
enhance [Plaintiff's] parole violation by saying these things....
[Defendant's] trying to make it seem like - - the report
was trying to make it seem like I was selling some type
of narcotics...." (Dkt. 42-4, p. 67:15–24). Plaintiff further
testified that "I feel myself that [Defendant] was just trying to
paint the picture that I was doing something crooked, or doing
something out of line, just to enhance my parole violation."
(*Id.*, p. 99:21–24).

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary
judgment may be granted only if all the submissions taken
together "show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.
317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also
Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106
S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears
the initial burden of demonstrating "the absence of a genuine
issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct.
2548. A fact is "material" if it "might affect the outcome
of the suit under the governing law," and is genuinely in dispute
"if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Anderson*, 477 U.S. at 248,
106 S.Ct. 2505; *see also Jeffreys v. City of New York*, 426 F.3d
549, 553 (2d Cir. 2005) (citing *Anderson* ).

If the moving party meets this burden, the nonmoving party
must "set out specific facts showing a genuine issue for trial."
*Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *see also
Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Wright v. Goord*,
554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary

judgment motion, the district court must construe the facts
in the light most favorable to the nonmoving party and must
resolve all ambiguities and draw all reasonable inferences
against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*,
352 F.3d 775, 780 (2d Cir. 2003).

Moreover, where plaintiff proceeds *pro se*, the Court must
read his submissions liberally and interpret them "to raise
the strongest arguments that they suggest." *McPherson v.
Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos
v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ). However, a
*pro se* party's " 'bald assertion,' completely unsupported by
evidence, is not sufficient to overcome a motion for summary
judgment." *Jordan v. New York*, 773 F.Supp.2d 255, 268
(N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21
(2d Cir. 1991) ); *see also Wagner v. Swarts*, 827 F.Supp.2d 85,
92 (N.D.N.Y. 2011).

### IV. DISCUSSION
**\*4** Liberally construing the Third Amended Complaint,
Plaintiff alleges that Defendant provided false evidence
against him in the form of GPS-tracking data, which resulted
in the revocation of Plaintiff's parole and the loss of his liberty.
(Dkt. No. 12, pp. 1–4). From this premise, Plaintiff appears
to assert three potential claims: 1) a federal due process claim
based on falsified evidence; 2) a federal due process claim
based on defamation; and 3) a state law claim for defamation.
In moving for summary judgment, Defendant argues that:
1) Plaintiff fails to establish a due process claim; and 2)
Defendant is entitled to qualified immunity. The Court will
consider each of Plaintiff's claims in turn.

### A. Federal Due Process Claim Based on Falsified Evidence
Plaintiff's first claim appears to allege a violation of his right
to due process based on Defendant's use of false GPS-tracking
evidence to revoke his parole. (Dkt. No. 12; *see also* Dkt. No.
42-4, p. 96:18–25).

"It is firmly established that a constitutional right exists not to
be deprived of liberty on the basis of false evidence fabricated
by a government officer acting in an investigating capacity."
*Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000); *see Zahrey
v. City of New York*, 2009 WL 1024261, at *8 n.14; 2009 U.S.
Dist. LEXIS 31893, at *30 n.14 (S.D.N.Y. Apr. 15, 2009)
(noting that "evidence fabrication serves to both improperly
charge and/or arrest a plaintiff as well as unfairly try him" and
characterizing plaintiff's evidence fabrication claim as a claim

Westley v. Burdo, Not Reported in Fed. Supp. (2018)

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 30 of 81

2018 WL 6703564

for violation of procedural due process under the Fifth, Sixth, and Fourteenth Amendments). Undoubtedly, a parole officer may not rely on evidence that the officer knows to be false. *See* *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016) (citing *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998) ). To support this sort of due process claim, a plaintiff must show, *inter alia*, that an investigating official fabricated evidence that caused a deprivation of life, liberty, or property. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).

In this case, it is undisputed that at all relevant times Plaintiff was a parolee subject to certain conditions of release, including an explicit prohibition from using, possessing, or purchasing alcoholic beverages. (Dkt. Nos. 42-2; 42-4, p. 72:23–25). Plaintiff acknowledged and agreed to comply with those required terms. (Dkt. No. 42-2). But the record is replete with undisputed evidence, including explicit admissions by the Plaintiff himself, that Plaintiff violated the condition not to use or possess an alcoholic beverage. (Dkt. No. 42-4, pp. 71:21–24, 72:23–73:10, 87:15–17, 93:3–4; *see also* Dkt. No. 42-6, ¶¶ 44–49). Specifically, Plaintiff admits that he possessed and consumed an alcoholic beverage on June 18, 2015. (Dkt. No. 42-4, pp. 72:23–73:25). The undisputed facts also show that Plaintiff's use of alcohol was the sole basis for the revocation of his parole; at the July 15, 2015 revocation hearing, Plaintiff pled guilty to the alcohol-related parole violation from June 18, 2015, and all curfew-related violations were dismissed with prejudice. (Dkt. Nos. 42-5, pp. 4:4–5:8; 42-3, p. 2). The administrative law judge accepted Plaintiff's guilty plea and imposed a fifteen-month sentence for the alcohol-related parole violation. (*Id.*, pp. 5:10–6:8).

Contrary to Plaintiff's claim, there is no evidence in the record to support his assertion that alleged curfew violations formed any basis for the revocation of Plaintiff's parole. Neither the GPS tracking information, nor the alleged curfew violations were even mentioned at Plaintiff's parole revocation hearing. (Dkt. No. 42-5). As part of the prehearing conference plea bargain, DOCCS agreed to withdraw all curfew-related charges with prejudice. (Dkt. No. 42-5, p. 5:5–8). Moreover, even if the GPS-tracking evidence was inaccurate, there is no evidence whatsoever that Defendant fabricated it or knew it was false, as discussed below. Thus, the record fails to provide even a scintilla of support for Plaintiff's bald assertion that Defendant used the GPS tracking information to "paint a picture that [Plaintiff] was doing something crooked, or doing something out of line, just to enhance [Plaintiff's] parole violation." (*See* Dkt. No. 42-2, pp. 99:21–100:14).

**\*5** In sum, the record shows that the sole basis for the revocation of Plaintiff's parole was his admitted use and possession of alcohol, an explicit violation of the conditions of his release. Plaintiff's baseless speculation that the real reason was falsified evidence regarding GPS tracking data is not sufficient to raise any genuine issue of material fact. Therefore, Plaintiff cannot sustain a federal due process claim based on falsified evidence.

**B. Federal Due Process Claim Based on Defamation**
Plaintiff's second apparent claim is for defamation based on Defendant's alleged false statements regarding Plaintiff's curfew-related parole violations. (Dkt. No. 12, p. 5). It is well-established that defamation, even when committed by a state official, is a matter of state law, and does not ordinarily rise to the level of a constitutional violation. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause, and something more than simple defamation by the state official must be involved to establish a claim under Section 1983); *see also Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000). However, an action can be grounded in Section 1983 when that plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

To prevail on a state-imposed federal defamation claim, a plaintiff must show: 1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and 2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. *Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) (holding that defamation is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a Section 1983 action absent a showing of stigma along with a more tangible element of deprivation, a "stigma plus claim"). Further, "to bring a successful stigma-plus claim, the plaintiff also must demonstrate that h[is] liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) (citing *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) ).

2018 WL 6703564

Here, even if Defendant's statements regarding Plaintiff's curfew-related parole violations were false, there is no evidence whatsoever of a causal connection to a state-imposed burden, such as deprivation of liberty, as discussed above. Plaintiff cannot establish a defamation claim where the alleged stigmatizing charges were dismissed with prejudice, and therefore did not contribute to the harm that Plaintiff now claims. Moreover, the record shows that the parole revocation hearing afforded Plaintiff the opportunity to challenge all statements and conclusions that formed the basis for the DOCCS's charges against Plaintiff. (Dkt. No. 42-5). The transcript from the hearing shows that Plaintiff did not object to any of the information contained within DOCCS's violation of release report, nor did he make any allegations regarding Defendant's professional conduct when he pled guilty. (Dkt. No. 42-5).

**\*6** Plaintiff, with the assistance of counsel, had every opportunity to challenge any statement or fact that he now contends are false, but failed to do so. The record shows that Plaintiff was aware that his guilty plea would result in his re-incarceration in exchange for the withdrawal of the remaining parole violation charges. (Dkt. No. 42-4, pp. 87:24–88:21; *see also* Dkt. No. 50, p. 2). Therefore, the Court finds that Plaintiff's parole revocation hearing gave him all the process he was due. *See Segal*, 459 F.3d at 213; *see also Sloane v. Ruiz*, 2009 WL 1024237, at \*2–3; 2009 U.S. Dist. LEXIS 31930, at \*5–7 (S.D.N.Y. Apr. 14, 2009) (holding that a Section 1983 claim fails where a plaintiff alleges false statements by his parole officer yet agrees to a guilty plea without challenging those statements at a parole hearing).

Accordingly, Plaintiff cannot sustain a federal due process claim for defamation.

### C. Qualified Immunity

Further, Defendant contends that he is entitled to qualified immunity because he acted reasonably in his use of GPS tracking data in Plaintiff's case. (Dkt. Nos. 21, ¶ 9; 42-10, p. 12). Having found that Plaintiff cannot sustain a federal claim based on a constitutional violation, the Court need not address qualified immunity. Nonetheless, the Court agrees that qualified immunity would apply in this case.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231,

129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). "Parole officers are entitled to qualified immunity when they perform their non-judicial and non-prosecutorial tasks, provided that they do not violate clearly established constitutional norms of which an objectively reasonable person should have been aware." *See Roberts v. Lapp*, 297 F. App'x 67, 69 (2d Cir. 2008) (citing *Scotto*, 143 F.3d at 111–13).

Plaintiff alleges that Defendant provided false evidence from the GPS-tracking unit which resulted in his parole revocation. (Dkt. No. 12). In his deposition, Plaintiff asserted that Defendant falsified GPS tracking data in order to "enhance my parole violation." (Dkt. No. 42-4, p. 99:21–24).

However, Defendant submitted evidence that he relied upon GPS-tracking data provided by a third-party company, Satellite Tracking of People, LLC, which notifies a parole officer when a parolee has gone beyond established boundaries set within curfew hours. (Dkt. No. 42-6, ¶¶ 7, 16). Defendant also submitted the underlying data provided by the company. (Dkt. No. 42-7). Thus, even if the data was somehow incorrect, there is no evidence whatsoever that Defendant falsified the evidence. Plaintiff's baseless assertions to the contrary fail to raise an issue of fact. At most, Defendant mistakenly relied upon data from a GPS unit that was not working properly and gave false readings. Therefore, viewing the facts in the light most favorable to Plaintiff, Defendant would nonetheless be entitled to qualified immunity because it was objectively reasonable for him to believe his actions were lawful. *See Catanzaro v. Weiden*, 140 F.3d 91, 96 (2d Cir. 1998) ("Generally, public officials are entitled to qualified immunity where their mistaken belief or decision was objectively reasonable.").

### D. State Law Claim for Defamation

Finally, to the extent Plaintiff asserts a common-law claim for defamation under New York State law, the Court declines to assert jurisdiction over such claims, which are properly brought in state court. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment") (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974) ).

### V. CONCLUSION

**Westley v. Burdo, Not Reported in Fed. Supp. (2018)**
Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 32 of 81
2018 WL 6703564

**\*7** For the reasons identified herein, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 42), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Third Amended Complaint (Dkt. No. 12) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6703564

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7124513
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Abdulkadir ALI, Plaintiff,
v.
ONEIDA COUNTY DISTRICT
ATTORNEY, et al., Defendants.
Abdulkadir Ali, Plaintiff,
v.
Utica Police Department, et al., Defendants.

6:23-CV-1115 (GTS/ATB), 6:23-CV-1116 (GTS/ATB)
|
Signed October 30, 2023

**Attorneys and Law Firms**

ABDULKADIR ALI, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

*\*1* Plaintiff Abdulkadir Ali, a prisoner proceeding pro se, commenced the above-captioned actions on September 1, 2023, seeking to proceed in forma pauperis ("IFP"). (Case No. 6:23-CV-1115 ("*Ali I*"), Dkt. Nos. 1, 2; Case No. 6:23-CV-1116 ("*Ali II*"), Dkt. Nos. 1, 2). Both actions were administratively closed due to plaintiff's failure to submit a complete IFP application and/or otherwise comply with the filing fee requirement. (*Ali I* Dkt. No. 3; *Ali II* Dkt. No. 3). Plaintiff refiled his applications to proceed IFP, and the Clerk accordingly reopened both actions. (*Ali I* Dkt. No. 6; *Ali II* Dkt. No. 6). On October 19, 2023, the court determined that *Ali I* and *Ali II* were related (*Ali II* Dkt. No. 7), and both complaints are presently before the undersigned for a recommendation on initial review.

### I. IFP Applications

Plaintiff declares in his IFP applications that he is unable to pay the filing fee. (*Ali I* Dkt. No. 4; *Ali II* Dkt. No. 4). After reviewing his applications and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaints in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955).

*\*2* In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. 1937). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v.*

*Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaints under the above standards.

## II. The Complaints

The complaints in both *Ali I* and in *Ali II* are completely devoid of any factual detail concerning the underlying events giving rise to plaintiff's allegations – i.e., his arrest and subsequent prosecution. Liberally construed, the complaint in *Ali I* alleges that the named defendant prosecutors [1] violated his Fourth Amendment right to be free from malicious prosecution. (*Ali I*, Dkt. No. 1 ("*Ali I* Compl.") at 1). [2] Plaintiff alleges that the defendant prosecutors "initiated and continued proceeding[s] against [him] without probable cause," and that "no probable cause" supported his "original arrest, continued confinement, or continued prosecution." (*Id.* at 9). Plaintiff further states that these individual defendants have "caused [him] continued confinement for a crime [he] did not commit ... and continue threats and unlawful motivation to frame [him] by fabricated evidence." (*Id.*). Plaintiff alleges that the "entire criminal proceeding would [have] been resolved in [his] favor if [his] motions and due process [weren't] terminated because of the defendants['] misconduct and malicious [sic]." (*Id.*). He then states that the defendants "concealed and misrepresented material facts from the grand jury and superior court to facilitate a forced erroneous conviction against [him]." (*Id.*). Plaintiff asserts that the "original action was terminated in favor of [his] criminal defense." (*Id.* at 10). However, in his prayer for relief plaintiff seeks "dismissal of charges," as well as $300,000 in damages and an "investigation into the misconduct" of the defendants. (*Id.* at 4).

[1]     Plaintiff has identified "Oneida County District Attorney" in the caption of the complaint; however it is unclear if plaintiff intended to name the DA's office as a separate defendant in this action. (*Ali I* Compl. at 1).

[2]     The complaints in both *Ali I* and *Ali II* are comprised of various form complaints provided by the court, as well as plaintiff's own attached sheets of paper. Accordingly, the original pagination of these documents is disordered. For the sake of clarity, the court will refer to the CM/ECF pagination when citing to the complaints.

The complaint in *Ali II* asserts that defendants Paladino, Williams, and Travasani – law enforcement agents with the

Utica Police Department [3] – violated plaintiff's "Fourteenth Amendment right which prohibits the deliberate fabrication of evidence by a state official." (*Ali II*, Dkt. No. 1 ("*Ali II* Compl.") at 9). Plaintiff states that these defendants "continued their investigation" of him "despite the fact that they knew [he] was innocent," and that "each investigator had an unlawful motivation to frame" plaintiff. (*Id.*). Plaintiff further alleges that the defendants used "extremely aggressive interview techniques when questioning witnesses, thus generating false statements and false evidence against [him]." (*Id.*). He states that the defendants used investigative techniques that were "so coercive and abusive that they knew or should have known that those techniques would yield false information and misconduct." (*Id.*). Plaintiff alleges that the investigators "deliberately fabricated evidence" to build a case against him "to satisfy public safety standards." (*Id.* at 10). In his prayer for relief, plaintiff seeks "dismissal of charges filed," $500,000 in damages, and an "investigation into the misconduct" of the defendants. (*Id.* at 4).

[3]     The Utica Police Department is identified in the caption of the *Ali II* complaint, however it is unclear if plaintiff intended to name this entity as a defendant itself. (*Ali II* Compl. at 1).

## DISCUSSION

## III. Prosecutorial Immunity

### A. Legal Standards

**\*3** The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy. *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). In *Anilao*, the Second Circuit explained:

Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) (quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to

charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler*, 424 U.S. at 431, 96 S.Ct. 984 ... (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864.

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606).

**B. Analysis**

Plaintiff's allegations against the defendant prosecutors in *Ali I* are vague, but he appears to claim that they are liable for initiating and continuing criminal proceedings against him without probable cause, and for concealing facts from the grand jury. Putting aside the various other pleading issues with plaintiff's *Ali I* complaint, including the significant Rule 8 deficiencies, it is clear that these defendants are entitled to absolute immunity for the alleged conduct associated with prosecuting plaintiff's criminal proceeding.

As the Second Circuit explained in *Anilao*, these prosecutorial functions fall squarely within the protection of prosecutorial immunity, "regardless of motivation." 27 F.4th at 864. Moreover, plaintiff has failed to raise any inference that his claims against these defendants derive from alleged conduct outside the scope of their traditional roles as prosecutors. Accordingly, the *Ali I* complaint should be dismissed with prejudice as against defendants McNamara, Garramone, and Carville.

**\*4** Moreover, if plaintiff did intend to name the Oneida County District Attorney's office as a defendant, it is not a separate legal entity that is subject to suit, and dismissal is warranted on that basis alone. *See, e.g., Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d 378, 399-400 (E.D.N.Y. 2020) ("Under New York law, "departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.") (collecting cases); *Griffith v. Sadri*, No. CV-07-4824, 2009 WL 2524961, at *8 (E.D.N.Y. Aug. 14, 2009) ("[A] district attorney's office is not a separate legal entity capable of being sued pursuant to § 1983.").

To the extent plaintiff seeks to impute the conduct of the defendant prosecutors to Oneida County, such a claim would also be subject to dismissal. In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy, or practice of that municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, as relevant to this case, "[t]he Second Circuit Court of Appeals has unequivocally held that 'prosecutorial acts may not fairly be said to represent official policy of the County,' because '[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " *Joyner v. Cnty. of Cayuga*, No. 5:20-CV-60 (MAD/TWD), 2020 WL 1904088, at *10 (N.D.N.Y. Apr. 17, 2020) (quoting *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Thus, because the defendant prosecutors here were acting on behalf of the State of New York, and not Oneida County, any alleged misconduct on these defendants' part cannot be imputed to Oneida County, and the complaint would be subject to dismissal as against the municipality.

**IV. <u>Fabrication of Evidence</u>**

### A. Legal Standards

#### 1. Fabrication of Evidence

When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the official infringes the accused's constitutional right to a fair trial in a manner that may be redressable in a § 1983 action for damages. *McDonough v. Smith*, 585 U.S. ——, 139 S. Ct. 2149, 2156-57, 204 L.Ed.2d 506 (2019); *accord Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer acting in an investigating capacity."); *see Zahrey v. City of New York*, No. 98-4546, 2009 WL 1024261, at *8 n.14 (S.D.N.Y. Apr. 15, 2009) (noting that "evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him" and characterizing plaintiff's evidence fabrication claim as a claim for violation of procedural due process under the Fifth, Sixth, and Fourteenth Amendments); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."). To state a claim for the denial of a fair trial based on the fabrication of evidence, a plaintiff must plausibly allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 30). However, testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. *Id.*

#### 2. Rule 8

**\*5** The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of claim showing that the pleader is entitled to relief,' and that each averment be 'concise and direct.' " *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL 1385890, at *2 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)) (quoting Fed. R. Civ.

P. 8(a)(2), 8(d)(1)). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). A complaint that fails to comply with Rule 8 "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Hudson v. Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

#### 3. Personal Involvement

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Recently, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability. *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020). Joining other circuits, the Second Circuit has held that there is no "special" rule for supervisory liability. *Id.* at 618.

Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937 .... "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 676 (2009)). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

#### 4. *Heck v. Humphrey*

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87, 114 S.Ct. 2364. *See also McDonough v. Smith*, 139 S. Ct. at 2156-57 (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, No. 8:20-CV-165 (GTS/DJS), 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020); *McFadden v. Jaeon*, No. 1:12-CV-1255 (NAM/RFT), 2012 WL 4107466, at *2 (N.D.N.Y. Aug. 23, 2012) (barring claims for false arrest and "faulty Miranda warnings" pursuant to *Heck*), *report and recommendation adopted*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012); *Harris v. Buffardi*, No. 1:08-CV-1322 (GLS/DRH), 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy--all of which are patent attacks on the validity of [plaintiff's] conviction--[were] barred.").

#### B. Analysis

**\*6** Plaintiff alleges that Officer Paladino, Chief Williams, and Investigator Trevasani of the Utica Police Department violated his Fourteenth Amendment rights by fabricating evidence, specifically "generating false statements and false evidence" against him by the use of "aggressive interview techniques when questioning witnesses," in "building" a criminal case against him. (*Ali II* Compl. at 9). Plaintiff, however, has failed to meet the minimum standard of coherently pleading the factual bases for his fabrication of evidence claim. *See Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Dismissal is appropriate where the complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well

disguised.") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). Aside from conclusory allegations, neither the *Ali I* nor the *Ali II* complaint provides facts adequately describing to the court the underlying arrest and investigation, including the specific information which plaintiff alleges to have been fabricated and forwarded to prosecutors for use in his criminal proceedings. Accordingly, dismissal is warranted due to plaintiff's deficient pleading. *See Joseph v. JRF Income Tax Bus. Servs.*, No. 21-CV-3869, 2021 WL 3516421, at *5 (E.D.N.Y. Aug. 10, 2021) ("A complaint that offers nothing more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' or that 'tenders naked assertions devoid of further factual enhancement' is insufficient.") (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

Moreover, plaintiff has failed to articulate how each of the named law enforcement defendants was individually, personally involved in the purported interrogations, or any other actions, that led to the alleged fabrication of evidence. Instead, plaintiff refers, generally, to "the defendants" when discussing the alleged violations of his constitutional rights. "[C]omplaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.' " *Wilson v. Cnty. of Ulster*, No. 1:20-CV-104 (TJM), 2022 WL 813958, at *7 (N.D.N.Y. Mar. 17, 2022) (quotation and other citations omitted); *see also Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018) ("[The] plaintiff's conclusory and vague allegations in the amended complaint, which generally refer to 'defendants' in the plural and fail to describe [the individual defendant's] specific role ... in the [underlying acts], are insufficient to demonstrate [the individual defendant's] personal involvement in ... the alleged misconduct.").

As a separate matter, plaintiff's claims may be barred by *Heck*. In the *Ali I* complaint, plaintiff states that "the original action was terminated in favor of my criminal defense." (*Ali I* Compl. at 10). Plaintiff's assertion, however, is undermined by his request in *Ali I* and *Ali II* that this court dismiss the pending criminal charges against him. Furthermore, the court takes notice that plaintiff's address currently listed on the docket report for this action is Oneida County Correctional Facility, where plaintiff appears to have been confined at the time he filed both complaints, and thereafter. The Supreme Court has made clear that a plaintiff cannot bring a fabricated evidence claim under section 1983 prior to the favorable termination of his prosecution, *McDonough*, 139 S. Ct. at

2156-57; thus, the apparent, ongoing status of plaintiff's criminal proceeding is another basis for dismissal.

### V. Utica Police Department

It is well established that "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted); *see Hester-Bey v. Police Dep't*, No. 12-CV-3320, 2012 WL 4447383, at *1 (E.D.N.Y. Sept. 24, 2012) (explaining that "[s]ection 1983 provides that an action may only be maintained against a 'person' who has deprived another of rights under the 'Constitution and Laws,'" and holding that, because "[t]he New York City Police Department is not a 'person' within the meaning of section 1983 [it] is therefore[ ] not a suable entity." (quoting 42 U.S.C. § 1983)). Thus, the Utica Police Department is not a proper defendant for plaintiff's section 1983 claims.

**\*7** Further, to the extent plaintiff intended to bring his claims against the City of Utica, of which the Utica Police Department "is an administrative arm," he has failed to plead such a claim. As previously set forth, in order to plead a claim against a municipality, a plaintiff must allege that he was harmed by a municipal "policy" or "custom." *Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018. Here, plaintiff's complaint is devoid of facts from which the court could infer, even under the most liberal construction, that his alleged injury was the result of any policy or custom of the City of Utica. *See, e.g., Cotto v. City of New York*, 803 F. App'x 500, 504 (2d Cir. 2020) (Cotto's allegations do not support a *Monell* claim because they focus on the individual officers and isolated events leading to Cotto's stop, detention, and prosecution without plausibly alleging a custom or policy pursuant to which those violations occurred.") For these reasons, the Utica Police Department should be dismissed as a party from this action.

### VI. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better

pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

With respect to the *Ali I* action, the court recommends dismissal of the complaint in its entirety, with prejudice. Based on the nature of plaintiff's allegations, the court cannot construe how plaintiff could amend this complaint to state a claim as against the named defendant prosecutors and/or the Oneida County District Attorney's Office.

With respect to the *Ali II* complaint, the court recommends dismissal with prejudice as to the claims against the Utica Police Department. With respect to plaintiff's fabrication of evidence claim against defendants Paladino, Williams, and Trevasani, however, the court recommends dismissal without prejudice to allow plaintiff an opportunity to amend. If the court adopts this recommendation, and plaintiff chooses to amend the *Ali II* complaint, plaintiff must provide a short and plain statement of the relevant facts supporting his fabrication-of-evidence claim against each defendant named in the amended complaint. To the greatest extent possible, plaintiff's amended complaint should describe all relevant facts supporting his case, including the dates and times, to his best approximation. Plaintiff must also describe how each defendant's acts or omissions violated his rights. In addition, if plaintiff chooses to amend his complaint, he should include additional facts regarding the status or ultimate disposition of his criminal case.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's applications for IFP (*Ali I* Dkt. No. 4; *Ali II* Dkt. No. 4) are **GRANTED**, [4] and it is

[4]    The court notes that, although plaintiff's applications to proceed IFP have been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

**RECOMMENDED**, that the *Ali I* complaint (*Ali I* Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**, and it is

**RECOMMENDED**, that the *Ali II* complaint (*Ali II* Dkt. No. 1) be **DISMISSED WITH PREJUDICE** as against defendant Utica Police Department, and it is

**RECOMMENDED,** that the *Ali II* complaint be **DISMISSED WITHOUT PREJUDICE TO ALLOWING PLAINTIFF FORTY-FIVE (45) DAYS TO AMEND HIS COMPLAINT** as to the fabrication-of-evidence claims against defendants Peter Paladino, Mark Williams, and Joseph Trevasani, and it is

**RECOMMENDED,** that if the court adopts this Recommendation, the plaintiff also be informed that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and plaintiff must not reassert in his amended complaint claims that the court has dismissed, and it is

 **\*8  RECOMMENDED**, that if the court approves this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for further proceedings, and it is further

**RECOMMENDED**, that if plaintiff fails to amend his complaint within the time allowed and without requesting an extension of time to do so, the *Ali II* action be **CLOSED** without further order of the court.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Slip Copy, 2023 WL 7124513

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8798116
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Abdulkadir ALI, Plaintiff,

v.

ONEIDA COUNTY DISTRICT ATTORNEY; Scott D.
McNamara, District Atty.; Grant Garramone, District
Atty.; and Todd Carville, District Atty., Defendants.

Abdulkadir Ali, Plaintiff,

v.

Utica Police Department; Peter Paladino, Badge
#6290, Investigator, Police Officer, Utica Police Dept.;
Mark Williams, Chief of Police, Utica Police Dept.;
and Joseph Trevasani, Badge # 8529, Investigator,
Police Officer, Utica Police Dept.; Defendants.

6:23-CV-1115 (GTS/ATB), 6:23-CV-1116 (GTS/ATB)
|
Signed December 20, 2023

**Attorneys and Law Firms**

ABDULKADIR ALI, 35997, Plaintiff, Pro Se, Oneida
County Correctional Facility, 6075 Judd Road, Oriskany,
New York 13424.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

*1 Currently before the Court, in the two above-captioned
*pro se* civil rights actions filed by Abdulkadir Ali ("Plaintiff"),
the first against the Oneida County District Attorney and
District Attorneys Scott D. McNamara, Grant Garramone,
and Todd Carville ("Defendants") (Case No. 6:23-CV-1115,
hereinafter referred to as *Ali I*) and the second against the
Utica Police Department, Chief of Police Mark Williams and
officers Peter Paladino and Joseph Trevasani ("Defendants")
(Case No. 6:23-CV-1116, hereinafter referred to as *Ali II*), is
United States Magistrate Judge Andrew T. Baxter's Report-
Recommendation recommending that Plaintiffs Complaint in
*Ali I* be dismissed in its entirety with prejudice, Plaintiff's
claims against the Utica Police Department in *Ali II* be
dismissed with prejudice, and Plaintiff's remaining claims in
*Ali II* be dismissed without prejudice to amendment within
a period of forty-five days. (*Ali I*, Dkt. No. 7; *Ali II*, Dkt.

No. 8.) Plaintiff has not filed an objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheets.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Baxter's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation. [1] Magistrate Judge Baxter
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear-error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a clear-error
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order
        t accept the recommendation." *Id.*; *see also Batista
        v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
        (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
        permitted to adopt those sections of [a magistrate
        judge's] report to which no specific objection is
        made, so long as those sections are not facially
        erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-
Recommendation (Dkt. No. 7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's *Ali I* Complaint (*Ali I*, Dkt. No. 1)
is **DISMISSED in its entirety with prejudice and without
leave to amend**; and it is further

**ORDERED** that Plaintiff's *Ali II* Complaint (*Ali II*, Dkt. No.
1) is **DISMISSED with prejudice** to the extent it asserts any
claims against Defendant Utica Police Department; and it is
further

**ORDERED** that Plaintiff's *Ali II* Complaint (*Ali II*, Dkt.
No. 1) is **DISMISSED without prejudice and with leave
to amend** as to the fabrication-of-evidence claims asserted
against Defendants Paladino, Williams and Trevasani; and it
is further

2023 WL 8798116

**ORDERED** that should Plaintiff wish to file an Amended Complaint in the *Ali II* action (with respect to the claims being dismissed with leave to amend *only*), any such Amended Complaint must (1) be filed within **FORTY-FIVE (45) DAYS** of the date of this Decision and Order, (2) be a complete pleading that complies with the pleading standards set forth in Federal Rules of Civil Procedure 8 & 10 and Local Rule 10.1, and (3) supercede and replace the original Complaint filed in this action in all respects; and it is further

**\*2** **ORDERED** that, should Plaintiff file an Amended Complaint within the above-referenced forty-five (45) day time period, the Amended Complaint be returned to Magistrate Judge Baxter for further review pursuant to 28 U.S.C. § 1915.

**All Citations**

Slip Copy, 2023 WL 8798116

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 42 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

2021 WL 5971316
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick WILSON, Plaintiff,

v.

COUNTY OF ONONDAGA, et al., Defendants.

5:20-CV-1489 (GTS/TWD)
|
Signed April 21, 2021

**Attorneys and Law Firms**

DERRICK WILSON, Plaintiff, pro se, 21481-052, Yazoo City Medium, Federal Correctional Institution, Inmate Mail/ Parcels, P.O. BOX 5000, YAZOO CITY, MS 39194.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** The Clerk has sent to the Court for review a *pro se* complaint filed by Plaintiff Derrick Wilson ("Wilson" or "Plaintiff") pursuant to 42 U.S.C. § 1983, together with an application to proceed *in forma pauperis* ("IFP Application"). (Dkt. Nos. 1, 2.) Plaintiff is incarcerated and has not paid the filing fee for this action. For the reasons discussed below, the Court grants Plaintiff's IFP Application and recommends that Plaintiff's complaint be accepted in part for filing.

## II. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). Upon review, Plaintiff has submitted a completed and signed IFP Application, which demonstrates economic need. (Dkt. No. 2.) Plaintiff has also filed the inmate authorization form required in this District. (Dkt. No. 6.) Accordingly, Plaintiff's IFP Application is granted.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because

Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, § 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate prisoner *pro se* complaints).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

 **\*2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 191 (2d Cir. 2008) (citation omitted).

**B. The Complaint**
As summarized by Plaintiff:

> This civil rights action arises from the collusive fabrication of evidence by governmental official and forensic analyst, throughout a 17 year period, from April 23, 2000 – December 5, 2017, in which all Defendants acted in concert, aided and abetted, and conspired with each other to manufacture false evidence against Derrick Wilson to frame Wilson for the April 23, 2000 shooting homicide of Waliek Hamer, in Syracuse, New York.

(Dkt. No. 1 at ¶ 1.[1]) Named as Defendants are: County of Onondaga; City of Syracuse; Onondaga County District Attorney ("DA") William J. Fitzpatrick; former Onondaga

County Assistant District Attorneys ("ADA") Stephen Dougherty, Matthew Doran, and Michael Ferrante; Assistant United States Attorney ("AUSA") Carla Freedman; current and former members of the City of Syracuse Police Department ("SPD") David Proud, Christopher Lundborg, John Nolan, Daniel Babbage, Randy Collins, Timothy Galineu, Mary Ellen Gossin, William Kittel, Don Hilton, and James Quatrone; Onondaga County's Wallie Howard Jr., Center for Forensic Science ("CFS") Interim Director ("Dir.") Kathleen Corrado, CFS Firearms Analyst Justine Kreso and CFS Forensic Analyst Matthew Kurimsky; and independent firearms analyst Joseph Cominolli. (Dkt. No. 1 at ¶¶ 8-33. [2])

[1]     Unless noted, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2]     The Clerk is directed add the "City of Syracuse" as a Defendant in this action as set forth in paragraph 33 of the complaint.

The complaint states that "[o]n June 18, 2014, Wilson was arrested for federal drug conspiracy and has been incarcerated based on the federal arrest and subsequent to sentencing in that matter from June 18, 2014 to the present date." *Id.* at ¶ 2. [3] On October 22, 2015, while incarcerated for the federal drug charge, Wilson was arrested pursuant to a sealed indictment in Onondaga County Court for the homicide of Waliek Hamer, *People v. Derrick Wilson*, Ind. No. 2015-0866-1. *Id.* at ¶ 3. Trial commenced on November 27, 2017, and after representing himself *pro se*, Wilson was acquitted of this homicide on December 5, 2017. *Id.*

[3]     According to the public website maintained by the Federal Bureau of Prisons ("BOP"), Wilson's earliest release date is June 7, 2038. *See* https://www.bop.gov/inmateloc (BOP Register Number: 21481-052) (last visited Apr. 21, 2021).

**\*3** According to Plaintiff, "[b]y the government officials conspiring with each other and others to manufacture false evidence during the 15 years investigative stage of the Hamer prosecution, and presenting such false evidence at Wilson's state criminal trial, Defendants infringed upon Wilson's 'absolute' constitutional right to a fair trial." *Id.* at ¶ 4. Plaintiff claims Defendants' "horrendous and unlawful conduct violated New York and Federal law and entitled Wilson to nominal compensatory and punitive damages under

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

42 U.S.C. § 1983, a federal statute authorizing a civil rights lawsuit based on such conduct." *Id.* at ¶ 5.

By way of background, Plaintiff states that during the early morning hours of April 23, 2000, Hamer was "fatally wounded by gunshots from an unknown assailant on South Salina Street in Syracuse, New York" on the sidewalk in front of "late-night eatery" Grandma Burgers. *Id.* at ¶¶ 37, 38. Members of the SPD, including Hilton, Proud, Babbage, and Quatrone arrived on the scene, secured the area, and began their investigation. *Id.* at ¶ 39.[4] Within hours of initiating their investigation, members of the SPD learned Plaintiff was also present at Grandma Burgers, an area classified by the SPD as "Brighton Brigade gang territory," around the time Hamer was murdered. *Id.* at ¶¶ 38, 40. Once Proud and Quatrone received this information, they began to "conspire" with each other and other members of the SPD to "fabricate evidence" against Plaintiff and "bribe and coerce witnesses to falsely implicate" Plaintiff as the "perpetrator of the Hamer homicide." *Id.* at ¶ 41.[5]

[4]     Plaintiff claims that during this time period, Hilton and Quatrone were employed by the SPD as a sergeant and detective, respectively, and they are currently employed by the Onondaga County District Attorney's Office as investigators. (Dkt. No. 1 at ¶¶ 26-27, 39.)

[5]     According to Plaintiff, members of the SPD were "angry" because Plaintiff had filed a previous civil rights action against the City of Syracuse and members of the SPD for subjecting Wilson to an illegal cavity search. (Dkt. No. 1 at ¶ 42, citing *Derrick Wilson v. City of Syracuse*, No. 5:98-cv-01718.) After filing this lawsuit, Proud and Quatrone "threatened and harassed" Plaintiff "incessantly." *Id.*

"In the immediate aftermath of the Hamer homicide investigation," Proud, Quatrone, and "other members of the SPD," conspired with each other to "bribe and coerce" Brighton Brigade gang members, including Witness Doe 1-4,[6] to falsely implicate Wilson in the Hamer homicide. *Id.* at ¶¶ 51-74. In April 2000, Witness Doe 3 and Witness Doe 4 were interviewed by SPD and informed by Quatrone that "they would both be charged with the murder of Hamer unless they each identified Plaintiff as the person who shot and killed Hamer. *Id.* at ¶¶ 54-55. "Under duress" from "Quatrone's threat of prosecution," Witness Doe 3 and Witness Doe 4

signed affidavits on April 23, 2000, implicating Plaintiff in the Hamer homicide." *Id.* Specifically, Witness Doe 3 swore "that he witnessed the Hamer homicide and was 85% sure that Plaintiff was the person that shot and killed Hamer." *Id.* at ¶ 56. Witness Doe 4 swore "that he witnessed the homicide and it was either Plaintiff or [ ] Barasheim Moody that shot and killed Hamer." *Id.* at ¶ 57.

[6]     Plaintiff states the names of non-party individuals have been changed to "Witness Doe 1 thru Doe 4" and will be disclosed during discovery. (Dkt. No 1 at ¶ 51 n.1.)

On May 19, 2000, Proud and Lundborg were working the " 'Sweep' detail, conducting an investigation into Plaintiff for alleged drug activity." *Id.* at ¶ 45. Plaintiff was arrested for unlawful possession of marijuana. *Id.* Lundborg "falsified a report averring that on May 19, 2000," Wilson "made the following spontaneous utterances, 'You think I did that murder', 'You guys are trying to make a case on me', 'you are talking to everyone except me about that, how come you don't talk to me?' and 'I was there, but I didn't do it' 'I didn't kill anybody'." *Id.* at ¶ 47. Plaintiff claims he never made these statements. *Id.* During Wilson's criminal trial for the Hamer homicide, Lundborg falsely testified that Plaintiff made the aforementioned "spontaneous utterances." *Id.* at ¶ 50.

**\*4** Additionally, between April and May 2000, Quatrone "bribed" Witness Doe 1 into falsely implicating Plaintiff as the person who shot and killed Hamer by "propositioning" Witness Doe 1 that if he "incriminated Plaintiff and persuaded Witness Doe 2 to do the same," Witness Doe 1 "would receive a reduced sentence for the criminal charges he was facing." *Id.* at ¶ 59. On June 6, 2000, Witness Doe 2 signed an affidavit swearing that he actually did witness Plaintiff shoot and kill Hamer, which differed from his prior statements. *Id.* at ¶ 60.

Between May and June 2000, Witness Doe 1 met with ADA Dougherty and members of the SPD that were investigating the Hamer homicide wherein Witness Doe 1 "falsely stated" that on May 20, 2000, "Plaintiff told Witness Doe 1 that he shot and killed Hamer." *Id.* at ¶ 61. "Between May 7, 2000 through July 18, 2000 ADA Dougherty searched for evidence and clues to corroborate Witness Doe 1's statement." *Id.* at ¶ 62. On July 18, 2000, ADA Dougherty "administered" for Witness Doe 1 to take a polygraph test. *Id.* at ¶ 63. Although the polygraph test confirmed Witness Doe 1 was telling the truth, ADA Dougherty "still had concerns about Witness Doe 1's credibility and could not find any evidence to corroborate his statement." *Id.*

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

ADA Dougherty met with Witness Doe 1 and his lawyer and "bribed Witness Doe 1 into providing false testimony at a grand jury that Plaintiff told Witness Doe 1 that he killed Hamer; and for Witness Doe 1 to ensure that his friends—Witness Doe 2, Witness Doe 3, and Witness Doe 4—who were expressing disinterest in testifying at a grand jury, would testify falsely at a grand jury that they witnessed Plaintiff shoot and kill Hamer." *Id.* at ¶ 64. For his assistance, ADA Dougherty promised Witness Doe 1 a reduced sentenced in the criminal charges he was facing. *Id.* at ¶ 65.

DA Fitzpatrick was briefed by ADA Dougherty as to Witness Doe 1's statement and, on August 23, 2000, at the direction of DA Fitzpatrick, ADA Dougherty convened a grand jury proceeding, during which all four of the Doe Witnesses presented false evidence. *Id.* at ¶¶ 67-71. For his part, Witness Doe 1 received a reduced sentence in a separate criminal manner. *Id.* at ¶ 72.

Plaintiff further claims that non-party Jamal Harris was interviewed numerous times in the year of 2000 by members of the SPD and that on May 12, 2000, he signed an affidavit swearing that he did not witness Plaintiff "having any involvement in the Hamer homicide." *Id.* at ¶ 75. Between April 2000 and June 2014, Proud and other members of the SPD "made a multitude of propositions to Harris" to change his sworn statement "from one not inculpating Plaintiff in the Hamer homicide to one falsely inculpating Plaintiff." *Id.* at ¶¶ 76-78. Proud told Harris if he changed his May 12, 2000, statement, he would receive a "get out of jail free card." *Id.* at ¶ 79.

As noted, on June 18, 2014, Plaintiff was arrested in this District, along with twelve others for federal drug conspiracy. *Id.* at ¶ 80. Harris was arrested as an alleged coconspirator of the drug conspiracy. *Id.* "Facing a life sentence in the federal drug case," Harris "accepted Proud's bribe to change his May 12, 2000, sworn statement to falsely implicate Plaintiff as the person who shot and killed Hamer." *Id.* at ¶ 82.

On September 22, 2014, members of the federal government and SPD met in AUSA Freedman's office, including Defendants AUSA Freedman, Babbage, and Nolan. *Id.* at ¶ 83. At this September 22, 2014, meeting Harris changed his May 12, 2000, sworn statement "by averring he witnessed Plaintiff shoot and kill Hamer, and that he furnished Plaintiff with the murder weapon—a 9 mm Lorcin, and that the SPD had recovered the murder weapon back in the year of 2000." *Id.* at ¶ 84. Additional meetings were held in AUSA Freedman's office on January 22, 2015, and on August 4, 2015, to finalize Harris' "get out of free jail card." *Id.* at ¶¶ 85-87.

**\*5** Between September 22, 2014, through September 25, 2014, Proud, Galineu, Babbage, Gossin, Kittel, and Collins "did computer research and falsely identified a photograph of a 9mm Lorcin that was removed by the SPD on August 25, 2000, in an unrelated investigation as the murder weapon in the Hamer homicide." *Id.* at ¶ 90. "Despite there being no chain of custody" and having "already examined and forensically excluded [it] as the murder weapon," CFS Dir. Corrado, Kreso, and Kurimsky "falsely identified random test fired ammunition to be the test fired ammunitions from the 9mm Lorcin." *Id.* at ¶ 93.

In October and November of 2014, Kurimsky and Kreso, at the direction of Hilton and Dir. Corrado, falsified microscopic comparison reports and results between the projectiles and cartridge casings from the Hamer homicide investigation and the manufactured false test fired ammunition from the 9mm Lorcin. *Id.* at ¶¶ 94-95. This information was reported back to AUSA Freeman, ADA Doran, and ADA Ferrante during the January 22, 2015, meeting. *Id.* at ¶ 96.

Thereafter, DA Fitzpatrick was briefed by ADA Doran and ADA Ferrante and, on September 1, 2015, at the direction and instruction of DA Fitzpatrick, a grand jury was convened by ADA Doran and ADA Ferrante during which Harris "provided bribed and false testimony." *Id.* at ¶ 88. On September 3, 2015, Kurimsky provided false testimony at the grand jury. *Id.* at ¶ 98. He also falsely testified during Wilson's 2017 criminal trial for the Hamer homicide. *Id.*

During Wilson's 2017 criminal trial, the prosecution introduced manufactured false evidence of photographs of the 9mm Lorcin into evidence as Government Trial Exhibits 30, 31, 32, and 33. *Id.* at ¶ 100. They also introduced manufactured false ballistic evidence by introducing manufactured test fired shell casing ammunition into evidence as Government Trial Exhibit 34. *Id.* at ¶ 101. Plaintiff claims Cominolli, an independent firearms analyst, "conspired" with Quatrone to prevent Plaintiff from conducting his own microscopic ballistic analysis and comparison. *Id.* at ¶¶ 106-111. Cominolli never conducted the "court ordered" microscopic analysis and comparison. *Id.*

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 46 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

Lastly, Plaintiff claims DA Fitzpatrick was aware of the facts pertaining to the conspiracy between the members of the SPD and Onondaga County to bribe and coerce Brighton Brigade members to falsely implicate Plaintiff in the Hamer homicide, and ordered ADA Dougherty to convene the August 2000 grand jury proceeding. *Id.* at ¶ 104. DA Fitzpatrick also was aware of the facts pertaining to the conspiracy between the members of the SPD, Onondaga County, CFS, and AUSA Freedman to fabricate gun and ballistic evidence, and ordered ADA Doran and ADA Ferrante to convene the September 2015 grand jury proceeding. *Id.* at ¶ 105. On October 22, 2015, DA Fitzpatrick "gave a public conference that was aired on local television networks ... announcing Plaintiff's arrest for the 15 years old Hamer homicide, and falsely promulgated to the public that there was ballistic evidence that placed the murder weapon in Plaintiff's hands, despite DA Fitzpatrick knowing that such evidence did not exist." *Id.* at ¶ 106.

The complaint sets forth four causes of action: (1) evidence manufacturing; denial of a fair trial under the Fifth, Sixth, and Fourteenth Amendments against all Defendants, *id.* at ¶¶112-19; (2) *Monell* claim against Onondaga County for the actions of DA Fitzpatrick, *id.* at ¶¶ 120-26; (3) *Monell* claim against Onondaga County for the actions of Dir. Corrado, *id.* at 127-32; and (4) civil conspiracy against all Defendants, *id.* at ¶¶ 133-39. The Court notes that on the first page of the complaint, Plaintiff also indicates he asserts a *Monell* claim against City of Syracuse. As relief, Plaintiff seeks monetary damages. For a complete statement, reference is made to Plaintiff's complaint.

### C. Nature of Action

**\*6** Plaintiff seeks relief pursuant to § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 495 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz,* No. 95-CV-0272 (TJM), 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). To state a claim under § 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk,* 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

## IV. ANALYSIS

### A. Prosecutorial Immunity Bars Plaintiff's Claims Against DA Fitzpatrick, ADA Dougherty, ADA Doran, and ADA Ferrante

It is well-settled that "[p]rosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.' " *Joyner v. Cty. of Cayuga,* No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at \*9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia, Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)). The function performed by the prosecutor defines the scope of this immunity. *See Imbler,* 424 U.S. at 430; *Warney v. Monroe Cty.,* 587 F.3d 113, 121 (2d Cir. 2009). Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler,* 424 U.S. at 430-31, while administrative duties or investigatory functions are not so immune, *Imbler,* 424 U.S. at 431 n.33; *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993); *Warney,* 587 F.3d at 121.

"This protection encompasses 'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters v. City of Buffalo,* 848 F. Supp. 2d 378, 385 (W.D.N.Y. 2012) (quoting *Barrett v. United States,* 798 F.2d 565, 571-72 (2d Cir. 1986)). Thus, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley,* 509 U.S. at 273. This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York,* No. 11 Civ. 316 (PGG), 2012 WL 2569085, at \*5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York,* No. 00 CIV 3626 (SHS), 2000 WL 1335865, at \*2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins,* 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler,* 424 U.S.

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 47 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns*, 500 U.S. at 490 (collecting cases), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

**\*7** Investigative tasks beyond the scope of absolute immunity are those "normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273; *see Kanciper v. Lato*, 989 F. Supp. 2d 216, 228-29 (E.D.N.Y. 2013) ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and 'they do not become prosecutorial functions merely because a prosecutor has chosen to participate.' " (quoting *Day v. Morgenthau*, 909 F.2d 75, 77-78 (2d Cir. 1990))). In *Peters*, the court listed activities such as orchestrating a sting operation, authorizing wiretaps, and assisting in the execution of a warrant as investigative or administrative that do not deserve absolute prosecutorial immunity. *Peters*, 848 F. Supp. 2d at 386 (citing cases).

Here, Plaintiff names DA Fitzpatrick, and former ADAs Dougherty, Doran, and Ferrante as Defendants in their individual and official capacities. (Dkt. No. 1 at ¶¶ 13-16.) Plaintiff states these Defendants are sued "only" for their conduct during the "investigative and administrative phase" and "excluding the advocacy phase." *Id.* After carefully considering the matter, the Court finds that despite labeling such actions "investigative and administrative," the allegations make clear that these Defendants are being sued related to their roles regarding each prosecutor's preparation for the initiating of a prosecution or for judicial proceedings and, therefore, are entitled to absolute prosecutorial immunity.

As set forth above, in the complaint, Plaintiff alleges ADA Dougherty met with Doe Witness 1 between May and July 2000 to ascertain whether his statements implicated Plaintiff in the Hamer homicide and to determine whether to present such statements to a grand jury. DA Fitzpatrick directed ADA Dougherty to convene a grand jury. ADA Dougherty then bribed the witness to give false testimony at the grand jury. Similarly, ADAs Doran and Ferrante presented the "bribed, coerced false testimony" from 2000 to the 2015 grand jury at the direction of DA Fitzpatrick. Thereafter, DA Fitzpatrick made false statements, including during a television appearance, after Wilson's indictment.

To the extent Plaintiff claims these Defendants knew at the time of Plaintiff's case being presented to the grand juries

that evidence and testimony was false and, nevertheless, conspired to present the same, such allegations relate to their roles in presenting the case to the grand jury; conduct for which they are entitled to absolute prosecutorial immunity. *See Hill*, 45 F.3d at 661-62 (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *see also Bernard v. Cty, of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (citations omitted).

Therefore, the Court recommends dismissing Plaintiff's 1983 claims against DA Fitzpatrick, ADA Dougherty, ADA Doran, and ADA Ferrante pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) based on absolute prosecutorial immunity.

Additionally, to the extent that Plaintiff seeks to impute the conduct of these Defendants to Onondaga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since DA Fitzpatrick, ADA Dougherty, ADA Doran, and ADA Ferrante were acting on behalf of the State of New York, and not Onondaga County, any alleged misconduct on these Defendants' part cannot be imputed to Onondaga County.

## B. Prosecutorial Immunity Bars Plaintiff's Claim Against AUSA Freedman

**\*8** Section 1983 provides redress for individuals who have been injured by a person acting under color of state law; it does not create a cause of action against persons who act under color of federal law. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 398 (1971) (Harlan, J., concurring). AUSA Freedman is an official of the federal government, and, as such, is not deemed a person acting under color of state law pursuant to § 1983. However, in view of Plaintiff's *pro se* status, the Court will construe any § 1983 claim against AUSA Freedman as an action under *Bivens*. *See Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995).

In *Bivens*, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by § 1983. However, *Bivens* claims are available only against federal

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 48 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

government officers in their individual capacities. The federal government itself and its agencies are immune from suit absent a waiver of sovereign immunity, and the Supreme Court has specifically declined to waive such immunity to allow a claim against a federal agency under *Bivens*. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 486 (1994).

Here, Plaintiff names AUSA Freedman as a Defendant in her individual and official capacity. (Dkt. No. 1 at ¶ 17.) Plaintiff states she is sued "only" for her conduct during the "investigative and administrative phase" and "excluding the advocacy phase." *Id.*

After carefully considering the matter, the Court finds that AUSA Freedman, in her capacity as a federal prosecutor, is entitled to absolute prosecutorial immunity with respect to the claims in this action. *See Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (noting that absolute prosecutorial immunity protects federal prosecutors facing *Bivens* actions). The only allegations against AUSA Freedman are that meetings were held in her office in 2014 and 2015, presumably through her role as a prosecutor in connection with and following Plaintiff's arrest in 2014 for federal drug conspiracy. Plaintiff does not allege that AUSA Freedman acted outside of her prosecutorial function.

Accordingly, AUSA Freedman is immune from suit challenging acts she undertook in her capacity as a prosecutor and, therefore, the Court recommends dismissing any claim against her pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) based on absolute prosecutorial immunity.

### C. Fabrication of Evidence

When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the official infringes the accused's constitutional right to a fair trial in a manner that may be redressable in a § 1983 action for damages. *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019); *accord Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer acting in an investigating capacity."); *see Zahrey v. City of New York*, 2009 WL 1024261, at *8 n.14 (S.D.N.Y. Apr. 15, 2009) (noting that "evidence fabrication serves to both improperly charge and/or arrest a plaintiff as well as unfairly try him" and characterizing plaintiff's evidence fabrication claim as a claim for violation of procedural due process under the

Fifth, Sixth, and Fourteenth Amendments); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.").

**\*9** To state a claim for the denial of a fair trial based on the fabrication of evidence, a plaintiff must plausibly allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 30). However, testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. *Id.*

Here, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, the Court recommends that a response be required to Plaintiff's fabrication of evidence claim against Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual capacities.

However, to the extent Plaintiff purports to sue these Defendants in their "official capacity," as current or former employees of the SPD and/or CFS, Plaintiff would be suing the City of Syracuse and Onondaga County because "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)). Therefore, the Court recommends dismissing any claims against these Defendants in their "official capacity" as redundant and duplicative of any claim asserted against the City of Syracuse and/or the County of Onondaga, which the Court addresses below in Part IV.F.

### D. Conspiracy

To adequately assert a conspiracy claim under § 1983 a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 49 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

(3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 283 (N.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 554) (other citation omitted).

Here, Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only vague statements throughout the complaint that all Defendants somehow acted in conspiracy with another. Notably absent from the complaint are specific facts plausibly indicating an agreement between the individual Defendants and/or to violate Plaintiff's constitutional rights. *See Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 F. App'x 9, 10 (2d Cir. 2013) (finding no conspiracy claim where plaintiff did not allege an agreement).

**\*10** Thus, the Court recommends dismissing Plaintiff's conspiracy claim against all Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. State Action

It is well-established that § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted). A plaintiff, however, can establish that a private actor was acting under color of state law by proving either: "(1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the

private actor." *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013).

"To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quotation marks and citation omitted). Alternatively, as set forth above, to show that there was a conspiracy between a private actor and the state or its agents, a plaintiff must provide evidence of "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (2d Cir. 2002)). These two methods of demonstrating state action – "joint action" and "conspiracy with" – are "intertwined" and overlap in significant respects. *Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) (quotation marks and citation omitted).

Here, Plaintiff alleges in wholly conclusory fashion that Cominolli, an independent firearms analyst, conspired with Quatrone to prevent Plaintiff from conducting his own microscopic ballistic analysis and comparison. (Dkt. No. 1 at ¶¶ 106-111.) Plaintiff has not alleged any facts from which the Court could reasonably construe a plausible § 1983 conspiracy or joint actor claim. Therefore, the Court recommends dismissing Plaintiff's § 1983 claims against Cominolli pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Municipal Liability

A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 50 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

 **\*11** A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection – an affirmative link– between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior.*" *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

As noted, Plaintiff alleges *Monell* claims against Onondaga County for the actions of DA Fitzpatrick and Dir. Corrado. (Dkt. No. 1 at ¶¶ 120-26, 127-32.) The first page of the complaint also references a *Monell* claim against City of Syracuse. Here, Plaintiff has not made any allegations that would approach stating a claim against the County of Onondaga or City of Syracuse. *See Gray-Davis v. New York*, 14-CV-1490 (GTS/TWD), 2015 WL 2120518, at \*6 (N.D.N.Y. May 5, 2015) ("Without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, [Plaintiff] fails to state a claim against those municipalities that is plausible on its face."); *Hawthorne v. City of Albany*, 17-CV-0716 (GTS), 2017 WL 6520774, at \*5 (N.D.N.Y. Nov. 14, 2017) (same).

As to Onondaga County, "[i]n this Circuit, a county may be liable pursuant to § 1983 for the actions of the district attorney in limited circumstances." *Miller v. Cty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (internal citation and quotation marks omitted). As set forth above, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez*, 853 F.2d at 77. "A county has no right to establish a policy concerning how [the district attorney] should prosecute violations of State penal laws." *Id.*

Accordingly, a district attorney's misconduct in prosecuting an individual cannot give rise to municipal liability. *See Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (citing *Baez*, 853 F.2d at 77). It is only where claims center on the administration or management of the district attorney's office that a district attorney may be found to have acted as a policymaker for purposes of § 1983 liability. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Walker*, 974 F.2d at 301 ("Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker.").

As discussed above, the claims Plaintiff is asserting against DA Fitzpatrick all involve actions taken by him in connection with the prosecution of the Hamer homicide, rather than in an administrative capacity. Therefore, the Court finds Plaintiff has failed to state a § 1983 *Monell* claim against Onondaga County with regard to the actions of DA Fitzpatrick.

 **\*12** To the extent Plaintiff seeks to hold the County of Onondaga liable for the actions of Dir. Corrado, the complaint also fails to state a claim. For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Here, Plaintiff fails to allege any facts to show that Dir. Corrado acted pursuant to any municipal policy or custom.

Lastly, the Court finds the complaint lacks any allegations whatsoever that would support a *Monell* claim again the City of Syracuse. Rather, as noted above, Plaintiff's merely references this claim on the first page of the complaint.

Accordingly, in light of the foregoing, the Court recommends that Plaintiff's § 1983 *Monell* claims against the County of Onondaga and the City of Syracuse be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### G. Whether to Permit Amendment

A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 51 of 81

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5971316

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In this case, it is not clear whether better pleading would permit Plaintiff to cure the deficiencies identified above. Nevertheless, out of deference to Plaintiff's *pro se* status, the Court recommends that he be granted leave to amend to cure the deficiencies identified above, except with regard to any claims against DA Fitzpatrick, ADA Dougherty, ADA Doran, ADA Ferrante, and AUSA Freedman, all of whom are entitled to absolute prosecutorial immunity.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; [7] and it is further

[7] Section 1915 permits "an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that the Clerk be directed to provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 6), and notify that official that Plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk is directed to revise the docket sheet to **ADD** the **CITY OF SYRACUSE** as a **DEFENDANT**; and it is further

**\*13    RECOMMENDED** that the complaint be **DISMISSED IN ITS ENTIRETY** as against Defendants Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman; and it is further

**RECOMMENDED** that only Plaintiff's Section § 1983 fabrication of evidence claim against Defendants Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual capacities **SURVIVES** initial review and requires a response; and it is further

**RECOMMENDED** that Plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[8] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5971316

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 52 of 81

**Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)**

2021 WL 5971316

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Wilson v. County of Onondaga, Not Reported in Fed. Supp. (2021)

2021 WL 5967130

2021 WL 5967130
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick WILSON, Plaintiff,

v.

COUNTY OF ONONDAGA et al., Defendants.

5:20-CV-1489
|
Signed 12/16/2021

**Attorneys and Law Firms**

OF COUNSEL: DERRICK WILSON, Plaintiff, Pro Se, 21481-052, Yazoo City Medium, FEDERAL CORRECTIONAL, INSTITUTION, Inmate Mail / Parcels, P.O. Box 5000, Yazoo City, MS 39194.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On December 4, 2020, *pro se* plaintiff Derrick Wilson ("plaintiff") filed this 42 U.S.C. § 1983 action against various law enforcement officials as well as Onondaga County and the City of Syracuse alleging that all of the defendants engaged in a seventeen-year-long conspiracy to fabricate evidence and frame him for murder. Dkt. No. 1. Plaintiff also sought leave to proceed *in forma pauperis* ("IFP application"). Dkt. Nos. 2, 3.

On April 21, 2021, following an initial review of the pleading, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed in part. Dkt. No. 10. Plaintiff has filed objections. Dkt. No. 11.

Upon *de novo* review of the portions to which plaintiff has objected, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. The Clerk of the Court shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 6) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915;

3. Plaintiff's complaint is DISMISSED IN ITS ENTIRETY against defendants Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman;

4. Plaintiff's § 1983 fabrication-of-evidence claim against defendants Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual capacities SURVIVES initial review and requires a response; and

5. Plaintiff's complaint is otherwise DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND pursuant to 28 U.S.C. § 1915(e) and § 1915A for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5967130

---

**End of Document**          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 54 of 81

2021 WL 7161914
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL; and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE; Sgt. Carleo, Syracuse
Police Officer; Sisley, Syracuse Police Officer;
Wolfe, Syracuse Police Officer; Kimpel, Syracuse
Police Officer; Marcus DeBottis, Jr., Syracuse
Police Officer; Lago, Syracuse Police Officer; and
Ranette Releford, CRB Administrator, Defendants.

5:21-CV-0915 (DNH/ML)
|
Signed 12/09/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Pro se Plaintiff, 1409 South
McBride Street, Syracuse, New York 13202.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** The Clerk has sent this *pro se* Amended Complaint
(Dkt. No. 5) and motion for appointment of counsel (Dkt.
No. 6) filed by Bishop Abraham S. Israel ("Plaintiff") to
the Court for review. For the reasons discussed below, I (1)
recommend that Plaintiff's Amended Complaint (Dkt. No. 5)
be (a) accepted in part for filing, and (b) dismissed in part
without leave to amend, and (2) order that Plaintiff's motion
for appointment of counsel (Dkt. No. 6) be denied without
prejudice.

**I. BACKGROUND**

On August 13, 2021, Plaintiff [1] commenced this action by
filing a Complaint and a motion to proceed *in forma pauperis*.
(Dkt. Nos. 1, 2.)

[1]  Plaintiff, who is not an attorney, cannot represent
other plaintiffs. Although parties have a statutory
right to "plead and conduct their own cases," 28
U.S.C. § 1654, unlicensed laypersons may not

"represent anyone else other than themselves."
*Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d
Cir. 2007) (internal quotation marks omitted);
*see also Guest v. Hansen*, 603 F.3d 15, 20
(2d Cir. 2010) ("A person who has not been
admitted to the practice of law may not represent
anybody other than himself."). The Amended
Complaint names two plaintiffs—Abraham S.
Israel and Jesus Christ Ministries. (Dkt. No. 5
at 1.) However, the IFP application is signed
solely by Plaintiff. (Dkt. No. 2.) Accordingly, I
reviewed this action with Abraham S. Israel as the
sole plaintiff. *See Yerushalayim v. Liecthung*, 19-
CV-4101, 2019 WL 3817125, at \*2 (E.D.N.Y. Aug.
13, 2019) (reviewing the action as brought by sole
plaintiff, Ben-Siyon Ish Yerushalayim, because
he was the only signatory on the complaint and
IFP application and, as an unlicensed layperson,
was incapable of representing the other named
plaintiffs).

On September 16, 2021, the undersigned issued an Order
and Report-Recommendation, which (1) granted Plaintiff's
application for leave to proceed *in forma paupers*, and (2)
recommended that the Court (a) accept for filing Plaintiff's
claims (i) that his right to free speech/religion was violated
pursuant to the First Amendment and 42 U.S.C. § 1983,
against Defendants Sisley and Wolfe regarding the incident
at Destiny USA on July 17, 2020, (ii) of false arrest pursuant
to the Fourth Amendment and 42 U.S.C. § 1983, against
Defendants Sisley and Wolfe regarding the incident at Destiny
USA on July 17, 2020, (iii) of unreasonable search and seizure
pursuant to the Fourth Amendment and 42 U.S.C. § 1983,
against Defendants Sisley and Wolfe regarding the incident
at Destiny USA on July 17, 2020, (iv) of unreasonable
search and seizure pursuant to the Fourth Amendment and
42 U.S.C. § 1983, against Defendant Kimpel regarding the
incident on December 13, 2020, (v) of false arrest pursuant
to the Fourth Amendment and 42 U.S.C. § 1983, against
Defendant DeBottis regarding the incident on April 23, 2021,
(vi) of unreasonable search and seizure pursuant to the
Fourth Amendment and 42 U.S.C. § 1983, against Defendant
DeBottis regarding the incident on April 23, 2021, and (vii)
of negligence pursuant to New York common law against
Defendants Carleo and Releford, (b) dismiss with leave
to replead Plaintiff's claims (i) pursuant to RICO, against
Defendants, (ii) that his right to equal protection was violated
pursuant to the Fourteenth Amendment and 42 U.S.C. §
1983, against Defendants, (iii) that his right to free of speech/
religion was violated by Defendant Carleo, pursuant to the

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020, (iv) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, (v) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, and (vi) of failure to protect against Defendant Kimpel, and (c) dismiss without leave to replead his claims of (i) dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants, (ii) law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse, (iii) harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants, (iv) unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants, (v) menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants, (vi) robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants, (vii) criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants, (viii) kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants, and (ix) disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants.

**\*2** On October 12, 2021, Plaintiff filed an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1) and a motion for appointment of counsel. (Dkt. Nos. 5, 6.)

On October 13, 2021, United States District Judge David N. Hurd issued an order adopting the undersigned's Order and Report-Recommendation dated September 16, 2021. (Dkt. No. 7.)

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

Construed as liberally as possible, the Amended Complaint alleges that Plaintiff's civil rights were violated by Defendants City of Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus DeBottis, Jr., Lago, and Ranette Releford (collectively "Defendants") during his interactions with them. (*See generally* Dkt. No. 5 [Am. Compl.].)

The Amended Complaint appears to assert virtually the same factual allegations as the Complaint did, but with additional legalese. More specifically, the Amended Complaint alleges that on or about July 17, 2020, Plaintiff was at a mall in Syracuse, New York ("Destiny USA") preaching the gospel, when Defendants Sisley and Wolfe approached him, escorted

him to a private room, detained him for approximately twenty minutes, then escorted him out of Destiny USA, and served him with an appearance ticket—which was ultimately dismissed. (*Id.* at 11-16.) Plaintiff alleges that during this incident, Defendants Sisley and Wolfe took—without a warrant—Plaintiff's passport, "papers," and $10.00. (*Id.*) Plaintiff alleges that he reported this incident to the Citizen's Review Board ("CRB"), was contacted by Defendant Carleo for an in-person interview in August 2020, but that Defendant Carleo denied Plaintiff a "[f]air [h]earing on the allegations against Carleo's co-workers ... and was negligent by denying the Plaintiff the relief request[ed]" and thus, "knowingly and unlawfully participated in the racketeering activity." (*Id.* at 15-16.)

Plaintiff alleges that on December 13, 2020, the Syracuse Police Department was summoned to 1409 South McBride Street, Syracuse, New York 13202, which is Plaintiff's church ("Jesus Christ Ministries"). (*Id.* at 16-18.) Plaintiff alleges that Defendant Kimpel responded, entered Jesus Christ Ministries without a warrant, searched and seized Plaintiff's sword, and then made Plaintiff and his wife, Natalia Israel, lock up and leave the premises. (*Id.*) Plaintiff alleges that approximately one hour later, at an unidentified location, by an unidentified individual, Plaintiff was assaulted and suffered minor contusions to his face, a swollen, black eye, and was hospitalized. (*Id.*) Plaintiff alleges that he called the Syracuse Police Department, Defendant Kimpel again responded, Plaintiff reported to Defendant Kimpel who assaulted him, and Defendant Kimpel informed Plaintiff that a warrant would be issued for that person's arrest. (*Id.*) Plaintiff alleges that on December 14, 2020, he called the Syracuse Police Department and discovered that Defendant Kimpel wrote a false report for a missing person, instead of the assault on Plaintiff. (*Id.* at 9-10.)

Plaintiff alleges that on April 23, 2021, he and his wife were engaged in an "alleged [d]omestic dispute" and Defendant DeBottis was the responding officer. (*Id.* at 18-20.) Plaintiff alleges that when Defendant DeBottis arrived on scene, Plaintiff was approximately one block away near his vehicle. (*Id.*) Plaintiff alleges that, without a warrant, Defendant DeBottis approached Plaintiff, placed him under arrest, placed handcuffs on him, seized his personal possessions, and took him to jail. (*Id.*) Plaintiff alleges that he spent seventeen days in jail as a result of this incident. (*Id.*)

**\*3** Plaintiff alleges that on April 23, 2021, he informed the "City of Syracuse (Erica T. Clarke) ... that his private property

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 56 of 81

was confiscated [without] a warrant" but that, despite this information, he was remanded to jail for seventeen days. (*Id.* at 20-21.)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries. (*Id.* at 21-22.) Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone. (*Id.*) Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her. (*Id.*) Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest. (*Id.*) Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed ... and there was no record of his formal complaint." (*Id.*)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020. (*Id.* at 22-23.) However, Plaintiff alleges that Defendant Releford, the CRB administrator, has failed to provide him with any recourse or means to address the unlawful conduct. (*Id.*)

Plaintiff alleges that he submitted numerous complaints to Syracuse Police Chief Kenton Buckner and received responses but that Chief Buckner has been negligent in his response to the misconduct of Syracuse police officers. (*Id.* at 23-24.)

Based on these factual allegations, the Complaint appears to assert [2] the following fourteen causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendants for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendants for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendants Sisley and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (6) a claim of false arrest against Defendants Sisley and Wolfe in violation of the Fourth Amendment and

42 U.S.C. § 1983, related to the incident on July 17, 2020; (7) a claim of illegal search and seizure against Defendants Sisley and Wolfe in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (8) a claim of negligence against Defendant Carleo related to Plaintiff's CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (9) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (10) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (11) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (12) a claim of illegal search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (13) a claim of negligence against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB complaints; and (14) a claim of defamation/slander/libel against Defendants. (*See generally* Dkt. No. 5.) As relief, Plaintiff seeks an injunction against the City of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages. (*Id.*)

2    The Amended Complaint (Dkt. No. 5) is brimming with legalese and references to several statutes and purported causes of action without any factual allegations associated that would plausibly suggest a claim. For example, the Amended Complaint lists "40 U.S.C. § 319 Grant of easements" as the ninth cause of action. (Dkt. No. 5 at 6.) "Now codified as 40 U.S.C. section 1314, section 319 permitted the federal government to grant states an easement over property held by the United States and also allowed the federal government to relinquish legislative jurisdiction over the easement area." *State v. Dodson*, 143 Wash. App. 872, 879 (Wash. Ct. App. 2008). Plaintiff's Amended Complaint and Complaint do not appear to allege facts plausibly suggesting any connection with state easements. As a result, based on Plaintiff's factual allegations and construing the Complaint liberally, the Court gleaned the fourteen causes of action cited herein.

**III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT**

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 57 of 81

**\*4**  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g.,* *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the

claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

### A. RICO Claims [3]

[3]

> Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the complaint. Thirty days after the filing of Plaintiff's Complaint was September 12, 2021. Thirty days after the filing of Plaintiff's Amended Complaint was November 11, 2021. Despite this deficiency being highlighted in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff has still noted filed a Civil RICO statement. (*See generally* docket sheet.)

**\*5**  As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, to allege an enterprise for purposes of a RICO claim, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

In addition, as stated in the Order and Report-Recommendation dated September 16, 2021, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 58 of 81

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.' ").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Amended Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. Plaintiff alleges in a conclusory fashion that "the following named Defendant(s) are an 'ongoing organization, formal or informal' and ... the stated Defendant(s) herein are a corrupt enterprise and/or entity separate and/or apart from the municipal corporation." (Dkt. No. 5 at 9.) However, Plaintiff fails to allege any facts plausibly suggesting those elements of a RICO claim. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at *13; *see also Peterson v. City of New York*, 2012 WL 75029, at *3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

### B. Dereliction of Duty

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 10 U.S.C. § 892, is a violation of the Uniform Code of Military Justice, and is wholly inapplicable here. As a result, I recommend that Plaintiff's claim for dereliction of duty be dismissed.

### C. Law Enforcement Misconduct

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 42 U.S.C. § 14141, [4] contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. § 12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced ...34 U.S.C. § 12601, but [that] provision[ ] contain[s] no private right of action."); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under ...34 U.S.C. § 12601 ... must be dismissed because there is no private right of action."). As a result, I recommend that this claim be dismissed.

[4]    Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

### D. Equal Protection Claim

**\*6**    As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

### E. First Amendment Claims

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

### F. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

here, municipalities such as" the City of Syracuse. *Tsinberg v. City of New York,* 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon,* 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.,* 506 U.S. 56, 57 (1992) (collecting cases).

### 1. False Arrest

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

### 2. Search and Seizure Claims

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

### G. Failure to Protect

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020. (Dkt. No. 5 at 16-18.) However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here). *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 195-96 (1989); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 533 (2d Cir. 1993).

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### H. State Law Negligence Claims

**\*7** "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.' " *Pasternack v. Lab. Corp. of Am. Holdings,* 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### I. State Law Defamation/Libel/Slander

Plaintiff appears to assert claims of defamation, libel, and slander against Defendants.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.,* 84 A.D.2d 470, 474 (N.Y. App. Div. 4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen,* 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.,* 940 F.3d 804, 809 (2d Cir. 2019). In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.,* 19-CV-1478, 2020 WL 6196144, at *8 (N.D.N.Y. Oct. 22, 2020) (Suddaby, C.J.) (citing *Albert,* 239 F.3d at 265-66).

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Plaintiff fails to allege facts plausibly suggesting any of the elements for a defamation claim. As a result, I recommend that Plaintiff's defamation claims be dismissed for failure to state a claim. [5] *See Bey ex rel. Dickerson v. Kelly*, 20-CV-2399, 2020 WL 3414612, at *3 (E.D.N.Y. June 22, 2020) (dismissing the plaintiff's defamation claim where he failed to allege facts in support of the five elements of defamation).

[5]     The Court also notes that Plaintiff's defamation claims may be time-barred. The statute of limitations for defamation claims under New York law is one year. N.Y. C.P.L.R. § 215(3). Some of the allegations in Plaintiff's Amended Complaint relate to incidents that occurred more than one year before the initiation of this action.

### J. Municipal Claims

As set forth above in Parts IV.A., B., C., and D., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity for the reasons set forth in the Court's Order and Report-Recommendation dated September 16, 2021.

### K. Claims Against Defendants in Their Official Capacities

**\*8** "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.). However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims be dismissed.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this case, because the Court has already afforded Plaintiff an opportunity to amend the Complaint, I find that it need not grant Plaintiff another opportunity to amend. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at *7 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint"); *Carrasco v. Annucci*, 17-CV-0246, 2017 WL 6492010, at *2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 61 of 81

(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

## VI. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 6.)

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

Before evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge*, 802 F.2d at 61).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, as noted above, the court should ascertain whether the indigent's claims seem likely to be of substance. If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control*, 28 F.3d at 1341 (quoting *Hodge*, 802 F.2d at 61). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the case may be of substance. Plaintiff's motion fails to make the requisite showing that he has been unable to obtain counsel through the private sector or public interest firms. (*See generally* Dkt. No. 6.) Plaintiff indicates that he contacted Everett Stern, who is the "CEO/Intelligence Director" of Tactical Rabbit Inc. (Dkt. No. 6 at ¶ 2.) There is no indication that Mr. Stern is an attorney licensed to practice in the United States District Court for the Northern District of New York, and a review of the attorney database does not indicate that he is. [7]

[7]    https://www.nynd.uscourts.gov/attorney-information-lookup last visited December 8, 2021.

In addition, a review of the issues in dispute are not overly complex. This case is early in the litigation process, but it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action.

While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. The Court is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation. Furthermore, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives any dispositive motions. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate in light of specific changed circumstances, consideration of the above factors warrants granting the application.

**\*10   ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED** without prejudice; and it is further respectfully

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 62 of 81

2021 WL 7161914

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **ACCEPTED FOR FILING** with respect to Plaintiff's claims

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Of Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **DISMISSED WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;

(3) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendants;

(4) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(5) Of failure to protect against Defendant Kimpel;

(6) Of defamation, slander, and libel;

(7) Against Defendant City of Syracuse and the individual Defendants in their official capacities;

pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [8]

[8]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 9.84 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[9]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 7161914

**Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)**

2021 WL 7161914

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2022)

2022 WL 18587

2022 WL 18587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE, Sgt. Carleo, Syracuse
Police Officer, Sisley, Syracuse Police Officer,
Wolfe, Syracuse Police Officer, Kimpel, Syracuse
Police Officer, Marcus Debottis, Jr., Syracuse
Police Officer, Lago, Syracuse Police Officer, and
Ranette Releford, CRB Administrator, Defendants.

5:21-CV-915
|
Signed 01/03/2022

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Plaintiff, Pro Se, 1409 South
McBride Street, Syracuse, NY 13202.

**<u>ORDER ON REPORT & RECOMMENDATION</u>**

DAVID N. HURD, United States District Judge

 **\*1** On August 13, 2021, *pro se* plaintiff Abraham S. Israel
("plaintiff") filed this action alleging that a laundry list of
defendants violated his civil rights while he was preaching
the gospel at a mall in Syracuse, New York. Dkt. No. 1.
Plaintiff also sought leave to proceed *in forma pauperis* ("IFP
application"). Dkt. No. 2.

On September 16, 2021, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP application and advised by
Report & Recommendation ("R&R") that several of plaintiff's
42 U.S.C. § 1983 claims should survive initial review. Dkt.
No. 4. This Court accepted and adopted Judge Lovric's R&R
on October 13, 2021.

Notably, however, while that first R&R was pending review,
plaintiff filed an amended complaint and a motion to appoint
counsel. Dkt. Nos. 5, 6. On December 9, 2021, Judge Lovric
denied plaintiff's motion for counsel without prejudice and
advised in a second R&R that plaintiff's amended complaint
be accepted for filing in part and dismissed with prejudice in
part. Dkt. No. 9.

Plaintiff has not filed objections to the second R&R, and the
time period in which to do so has expired. Upon review for
clear error, the R&R is accepted and will be adopted. *See* FED.
R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff "Bishop Abraham S. Israel's" amended complaint
is ACCEPTED FOR FILING as to his claims:

   (1) that his right to free speech / religion was violated
   pursuant to the First Amendment and 42 U.S.C. §
   1983, against defendants Sisley and Wolfe regarding the
   incident at Destiny USA on July 17, 2020;

   (2) of false arrest pursuant to the Fourth Amendment and
   42 U.S.C. § 1983, against defendants Sisley and Wolfe
   regarding the incident at Destiny USA on July 17, 2020;

   (3) of unreasonable search and seizure pursuant to the
   Fourth Amendment and 42 U.S.C. § 1983, against
   defendants Sisley and Wolfe regarding the incident at
   Destiny USA on July 17, 2020;

   (4) of unreasonable search and seizure pursuant to the
   Fourth Amendment and 42 U.S.C. § 1983, against
   defendant Kimpel regarding the incident on December
   13, 2020;

   (5) of false arrest pursuant to the Fourth Amendment and
   42 U.S.C. § 1983, against defendant DeBottis regarding
   the incident on April 23, 2021;

   (6) of unreasonable search and seizure pursuant to the
   Fourth Amendment and 42 U.S.C. § 1983, against
   defendant DeBottis regarding the incident on April 23,
   2021; and

   (7) of negligence pursuant to New York common law
   against defendants Carleo and Releford;

3. The amended complaint is DISMISSED WITH
PREJUDICE as to the:

   (1) RICO claims against defendants;

   (2) dereliction of duty claims against defendants;

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2022)
2022 WL 18587
Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 65 of 81

(3) law enforcement misconduct claims against defendants;

(4) equal protection claims against defendants;

(5) failure-to-protect claim against defendant Kimpel;

(6) defamation, slander, and libel claims;

(7) claims against the City of Syracuse;

(8) any official-capacity claims against the individual defendants.

4. Plaintiff "Jesus Christ Ministries" is DISMISSED as a plaintiff;

**\*2** 5. The Clerk of the Court is directed to amend the docket to reflect that defendants City of Syracuse and Lago have been dismissed and that defendants Sisley, Wolfe, Kimpel, DeBottis, Carleo, and Releford remain as defendants in this action.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 18587

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1534416
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gerald T. GERRARD, Plaintiff,

v.

John BURNS; Jefferson County Sheriff Department;
and Jefferson County, New York, Defendants.

No. 7:14–CV–1235.
|
Signed April 6, 2015.

**Attorneys and Law Firms**

Gerald T. Gerrard, Black River, NY, pro se.

Jefferson County Attorney, Jefferson County Office Building, David J. Paulsen, Esq., of Counsel, Watertown, NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

DAVID N. HURD, District Judge.

**I. *INTRODUCTION***

 **\*1**  Plaintiff Gerald T. Gerrard ("plaintiff" or "Gerrard") brings a complaint against defendants John Burns ("Sheriff Burns"), Jefferson County Sheriff Department ("the Sheriff's Department"), and Jefferson County, New York asserting claims for defamation, respondeat superior, and breach of the right to privacy under New York Civil Rights Law section 50–a. Plaintiff seeks $25 million in compensatory damages.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule ___") 12(b)(1).[1] No opposition was filed by plaintiff despite requesting and being granted an extension of time in which to respond.

[1]      Although the motion is made solely under Rule 12(b)(1) and defendants argue lack of subject matter jurisdiction, they also argue the allegations are insufficient to state claims for defamation, respondeat superior, and violation of New York Civil Rights Law section 50–a. Accordingly, it is

fair to say the motion is also made under Rule 12(b)(6) for failure to state a claim.

The motion was taken on its submissions and without oral argument.

**II. *BACKGROUND***

The following facts, taken from the complaint, are assumed true for purposes of the motions to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

Gerrard was employed by the Sheriff's Department from 1977 through 1992. Throughout his tenure, he was never subject to any disciplinary action. In February 1991, derogatory comments were made regarding plaintiff's sexuality.[2] When he demanded that a written apology be placed in his personnel file, the offending party refused to comply, but verbally stated he or she was sorry. Following this incident, Gerrard became the subject of ridicule and the target of the Sheriff's Department and its employees.

[2]      Plaintiff also alleges that in 1989, an employee of the Sheriff's Department attempted to break into employee personnel records and subsequently resigned from her position. It is unclear how this relates to the derogatory comments made about plaintiff in 1991.

In September 1991, plaintiff injured his knee while working. He underwent surgery and took over a year off from work. The Sheriff's Department's policy at the time guaranteed an employment position for injured workers for up to one year after the date of an injury. Based on the policy, Gerrard was not allowed to return to work after he was cleared by his physicians. Despite the policy, other injured workers in the preceding and following years who were forced to miss over a year of work were allowed to return to employment at the Sheriff's Department.

In the twenty-one years following his departure from the Sheriff's Department, plaintiff repeatedly tried to return to a position in the law enforcement field. When Gerrard applied for a position as a driver for a tree-cutting service, an Under Sheriff at the Sheriff's Department advised the potential employer that plaintiff "was skizoid, had [his] gun taken away, could deal with the public, and refused to return to work."[3] Compl. ¶ 20. Despite his efforts, Gerrard was unable to find work and suffered severe financial loss. He eventually began looking for lower paying positions outside of the

field of law enforcement and returned to school to pursue a paralegal degree. He continued having problems finding employment.

3       Asserting that plaintiff "could deal with the public" is possibly a typo; presumably the Under Sheriff advised that plaintiff "could *not* deal with the public."

In October 2013, plaintiff considered applying for a security job at a National Aeronautics and Space Administration site. He suspected that someone at the Sheriff's Department was sabotaging his efforts to obtain employment, so he hired an individual to investigate how he was being portrayed by the defendants to potential employers. As a result of this investigation, Gerrard learned he was being portrayed as a mentally disturbed individual who was not a suitable employee.

## III. *DISCUSSION*

**\*2** As noted, Gerrard has not filed any opposition to defendants' motion. Pursuant to Local Rule 7.1(b)(3), "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement ... the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause be shown." Here, defendants' motion to dismiss is properly filed, plaintiff has failed to oppose it (despite being granted an extension of time to do so), and plaintiff has failed to show good cause. Therefore, it must be determined whether defendants have met their "burden to demonstrate entitlement" to dismissal. An inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss. *See e.g., Herring v. Tabor,* No. 9:12–CV–1739, 2014 WL 2946545, at \*5 (N.D.N.Y. June 30, 2014) (noting that where a defendant's motion to dismiss is unopposed, the "burden of persuasion is lightened such that, in order to succeed, the motion need only be 'facially meritorious.' ").

### A. *Rule 12(b)(1)*
A district court properly dismisses a case for lack of subject matter jurisdiction where it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Subject matter jurisdiction may be based on either a federal question or the

complete diversity of citizenship of the parties. 28 U.S.C. §§ 1331, 1332; *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir.2002). Federal question jurisdiction exists where the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 25 (2d Cir.2000) (internal quotations omitted). The plaintiff bears the burden to prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113.

### B. *Rule 12(b)(6)* [4]
4       Although they have not specifically moved under 12(b)(6), defendants do attack the sufficiency of plaintiff's allegations. Further, as explained in detail below, the claims asserted in the complaint are, on their face, state law claims. However, construed liberally, some allegations could be read as asserting constitutional violations, but those claims would fail for the reasons discussed below. Therefore, in the interest of thoroughness, the standard for failure to state a claim upon which relief may be granted is included here.

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where a plaintiff has failed to provide some basis for the allegations that support the elements of his claims. *See Twombly,* 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. *Chambers,* 282 F.3d at 152.

### C. *Pro Se Plaintiff*
**\*3** Submissions by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," *Ferran*

*v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (internal quotations omitted), and their pleadings are to be liberally construed "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999). The obligation to be lenient while reading a pro se plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D .N.Y.2010) (citing *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). Nonetheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (internal quotations omitted)); *see also Zapolski v. Fed. Republic of Germany,* 425 F. App'x 5, 6 (2d Cir.2011) (summary order) (pro se plaintiffs must plead sufficient facts to establish a plausible claim to relief and establish subject matter jurisdiction).

### D. *Application*

In his complaint, Gerrard does not invoke § 1331 or § 1332. [5] Nor does he identify any specific federal substantive law that defendants allegedly violated or that provides an independent cause of action. He instead asserts these claims: defamation against Sheriff Burns (Count I); respondeat superior against Jefferson County and the Sheriff's Department (Count II); respondeat superior against Jefferson County (Count III); and breach of the right to privacy under New York Civil Rights Law section 50–a against Sheriff Burns, Jefferson County, and the Sheriff's Department (Count IV).

[5]    Subject matter jurisdiction cannot be based on § 1332 as all parties are undisputably residents of New York.

### 1. *Defamation* (Count I)

"Generally, defamation is an issue of state, not of federal constitutional, law." *Vega v. Lantz,* 596 F.3d 77, 81 (2d Cir.2010). Under limited circumstances, a constitutional violation may be found when the defamation is committed by a government official. *Id.* A defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 when a plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." [6] *Id.* (quoting *Algarin v. Town of Wallkill,* 421 F.3d 137, 138 (2d Cir.2005)). To establish a "stigma plus" claim, a plaintiff must show: (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-

imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) (internal quotations omitted). The "state-imposed burden" or "alteration" of the plaintiff's status or rights must be in addition to the stigmatizing statement. *Id.* The Second Circuit has cautioned against conflating the "deleterious effects" of the defamation itself with the "additional state-imposed burden"-the "plus" "necessary for invoking the 'stigma plus' doctrine." *Id.* at 38–39.

[6]    Although no where in the complaint has plaintiff pleaded a claim pursuant to § 1983, or a "stigma plus" claim, such a claim will be considered as plaintiff has asserted a defamation claim against Sheriff Burns, a government official. As Gerrard is proceeding pro se, his pleadings must be liberally construed to raise the strongest arguments that they suggest.

**\*4** Here, although plaintiff plausibly alleges the "stigma" piece of his claim-that the Sheriff's Department and/or Burns' publication of false and defamatory statements to prospective employers prevented him from obtaining employment-he fails to allege the "plus." As plaintiff alleges he did not return to work due to an injury and the Sheriff's Department's policy regarding absences longer than a year, he cannot argue a plus stemming from the loss of government employment. *See Smith v. Town of Stony Point,* No. 13 CV 5000, 2014 WL 2217900, at \*4 (S.D.N.Y. May 22, 2014) (citing *Siegert v. Gilley,* 500 U.S. 226, 234 (1991) (finding no liberty interest was implicated when alleged government defamation occurred subsequent to plaintiff's voluntary resignation from government employment); *Sadallah,* 383 F.3d at 38–39 (damage to reputation and resulting economic harm were direct "deleterious effects" of alleged defamation, and did not "satisfy the separate and independent 'plus' prong of the 'stigma plus' test")). Nor can plaintiff establish a "plus" based on his inability to continue to work in the field of law enforcement, as this is a direct consequence of the defamation itself. *See Smith,* 2014 WL 2217900, at \*4.

Accordingly, plaintiff cannot state a federal constitutional law claim based on the alleged defamatory statements. Defamation is generally a state law claim, and to the extent Gerrard's assertions could be liberally read to allege a stigma plus claim, he fails to allege the plus. Therefore, *Count 1* cannot give rise to subject matter jurisdiction.

### 2. *Respondeat Superior* (Counts II and III)

Municipalities may be liable for common law torts committed by their employees under the doctrine of respondeat superior. *See e.g., L.B. v. Town of Chester,* 232 F.Supp.2d 227, 239 (S.D.N.Y.2002). *Count II* alleges respondeat superior liability on the part of the Sheriff's Department and Jefferson County for Sheriff Burns' alleged defamatory statements. As plaintiff's defamation claim is solely a state claim, *Count II* alleging liability for defamatory statements cannot confer subject matter jurisdiction.

Count III, although titled "Respondeat Superior," could be liberally construed to allege a negligent supervision or failure to train claim against Jefferson County. Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality may be liable for constitutional violations if caused by: (1) a municipal policy; (2) a municipal custom or practice; or (3) the decision of a municipal policymaker. *See Pearce v. Labella,* 971 F.Supp.2d 255, 267 (N.D.N.Y.2013) (citing *Monell,* 436 U.S. at 694).

Plaintiff's conclusory allegations that Jefferson County "is responsible for hiring, supervising, and training agencies such as Defendant Sheriff's Department," "Defendant County has a duty to ensure its agencies act competently and ethically," and "Defendant County breached its duty to competently supervise the direction of Defendant Sheriff's Department and its employees," Compl. p. 5., allege no facts. Further, there is no underlying constitutional violation alleged for which it could be established that a Jefferson County custom or policy caused said violation. *See Monell,* 436 U.S. at 694. Accordingly, *Count III* cannot give rise to subject matter jurisdiction.

### 3. *Section 50–a* (Count IV)

**\*5** Plaintiff alleges his privacy was breached under New York Civil Rights Law section 50–a. Section 50–a provides:

> All personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof ... shall be considered confidential and not subject to inspection or review without the express written consent of such

police officer ... except as may be mandated by lawful court order.

N.Y. Civ. Rights Law § 50–a. Alone, this alleged violation of a state statute cannot sustain subject matter jurisdiction in federal court. Liberally construed, plaintiff could be alleging a procedural due process violation based on the state statute. To prevail on such a claim, Gerrard "must show he possessed a protected liberty or property interest in the privacy of his personnel file and was deprived of that interest without due process.[7] *Smith,* 2014 WL 2217900, at \*2 (citing *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001)). He cannot do so however, as "New York courts have repeatedly upheld disclosures of the contents of police personnel files ... in furtherance of the police departments' official functions." *Id.* Just as in *Smith,* defendants here are alleged to have disclosed information from plaintiff's personnel file in furtherance of their official functions (responding to employment inquiries). 2014 WL 2217900, at \*2 (finding no procedural due process violation in substantially similar factual context). Section 50–a affords plaintiff no right to privacy in his personnel file under these circumstances, and therefore he cannot claim that defendants' disclosure of his personnel file deprived him of a property interest in violation of the Constitution.

[7]    It is not entirely clear the connection between the alleged defamatory statements made to prospective employers and the contents of Gerrard's personnel file.

Accordingly, *Count IV* does not allege a violation of federal substantive law that would confer subject matter jurisdiction upon the undersigned.

### E. *Amendment*

In its current form, the complaint fails to assert any basis for subject matter jurisdiction, and even construed liberally, it also fails to state a claim upon which relief could be granted. Under such circumstances, a pro se litigant such as plaintiff would normally be granted an opportunity to amend his complaint. *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). However, such measures are not warranted here because, as explained above, any amendment would be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (dismissal is appropriate where leave to amend would be futile). In light of the above discussion, it is clear that plaintiff's complaint

cannot proceed as drafted and any amendment would be futile.

**IV.** *CONCLUSION*
Gerrard asserts only state law claims over which subject matter jurisdiction is lacking. Even construing his allegations liberally, he cannot make out any federal claims. Because any amendment would be futile, leave to do so is not required. For these reasons, defendants' motion to dismiss plaintiff's complaint will be granted.

 **\*6** Therefore, it is

ORDERED that

1. Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is GRANTED;

2. Plaintiff's complaint is DISMISSED in its entirety; and

3. The Clerk is directed to serve a copy of this Memorandum–Decision and Order on the parties in accordance with the Local Rules, file a judgment accordingly, and close the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1534416

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 71 of 81

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

2017 WL 1418296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William G. SCHISLER, Sr., Plaintiff,

v.

CITY OF ROME, et al., Past
Management and Present, Defendants.

6:17-CV-312 (GTS/ATB)
|
Signed 03/22/2017

**Attorneys and Law Firms**

WILLIAM G. SCHISLER, SR, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the court a civil rights complaint, together with a motion to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, William G. Schisler, Sr. (Dkt. Nos. 1, 2).

**I. IFP Application**
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Although plaintiff's complaint is unclear, he appears to suing the City of Rome, the present Mayor of Rome, Jackie Izzo, the former Mayor of Rome, Joseph Fusco, Jr., and the President of the Common Council in Rome. Plaintiff starts his complaint by stating that "this case" has been "going on for the last four years." (Complaint ("Compl.") ¶ 4) (Dkt. No. 1). He then states that "you" want dates, names, and proof, and plaintiff has provided dates, names, and proof. (*Id.*) Plaintiff then begins discussing problems that he had with the City of Rome pertaining to his former home, at 105 Fourth St. in Rome, New York ("105 Fourth St."), which is the subject of another law suit that he has pending in this district. *Schisler v. Dominico*, 6:15-CV-734 (TJM/ATB).

**\*2** Plaintiff appears to be reiterating many of the issues that are involved in the other action that he has pending in this court. In fact, as "Exhibits" to the current action, plaintiff has attached a photograph of 105 Fourth St. and a letter that an attorney wrote to plaintiff's neighbors (former defendants in 15-CV-734), asking them to stop harassing the Schislers.[1] *Schisler v. Dominico* is still pending, and the only remaining issue involves the refusal of defendants in that action to allow the Schislers to build a driveway next to their former home.

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 72 of 81

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)
2017 WL 1418296

¹       When Mr. Schisler filed 15-CV-734, he filed the
        case with a co-plaintiff, Annette Dow, who is now
        Annette Schisler.

In this complaint, plaintiff alleges that when Mrs. Schisler,
then Ms. Dow, called to have the water shut off in 105 Fourth
St., she was told that only Mr. Schisler could request this
action, because only he was the owner of the home. (Compl.
¶ 4 at CM/ECF p.3). Mr. Schisler states that this was not true,
and that either one of them could have requested that the water
be turned off. (*Id.*) Plaintiff then states that the power was
still "on," and that he and Mrs. Schisler were both in Utica
and in Rome, and that they were in litigation with M & T
Bank ² over the house and "paying for a dump" that they had
to "again move out of and into a new one." (*Id.* at 4). Plaintiff
states that they had to move "due to mold, mildew and roaches
due to landlord failing to keep up his responsibilities." (*Id.*)

²       Plaintiff has an action against M & T Bank and
        other defendants pending in the Northern District
        of New York. *Schisler v. M & T Bank*, No.
        6:16-CV-514 (DNH/TWD) (report-recommending
        dismissal pending). However, that action was filed
        in May of 2016 and refers to a foreclosure action. It
        is unclear if plaintiff is referring to another action
        involving M& T Bank, but this complaint cites
        2014 as the year in which plaintiff had litigation
        over a house. Any litigation with M & T Bank is
        irrelevant to this court decision herein.

Plaintiff states that because of the second "move," "they"
have lost everything twice, and this has been financially
draining on two disabled parents and one disabled child. This
statement appears unrelated to the present issues. Mr. Schisler
may be trying to say that he and his family have had a difficult
time since they left 105 Fourth St. because they have had
to move again, and plaintiff views this as "losing everything
twice." However, the deficiencies allegedly caused by the
Schislers' "landlord" have nothing to do with any of the
current municipal defendants, and plaintiff cannot bootstrap
what he views as additional damages, caused by a private
person, into a civil rights complaint.

Mr. Schisler then states that "[i]f you sit down with us and
heard our side of this whole mess you could understand
our frustration!!" (*Id.*) Plaintiff's "First Cause of Action" is
"Negligence in assisting in protecting a handicap individuals
[sic] property and home." (*Id.* at 5). The "Second Cause
of Action" is "intentional infliction of emotional distress
and mental anguish of a hearing impaired, handicapped

individuals [sic]." (*Id.*) Plaintiff has asked for $20.5 million
dollars.

### III. Personal Involvement/Municipal Liability

#### A. Legal Standards
Personal involvement is a prerequisite to the assessment of
damages in a section 1983 case, and respondeat superior is
an inappropriate theory of liability. *Richardson v. Goord*, 347
F.3d 431, 435 (2d Cir. 2003). It is also well-settled that in order
to establish liability of a municipality pursuant to 42 U.S.C. §
1983 for violation of civil or constitutional rights, a plaintiff
must allege that the municipality "has adopted a 'custom' or
'policy' which is the 'moving force' behind [the violation]."
*Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997)
(citing *Monell v. Dept. of Social Services of City of New York*,
436 U.S. 658, 689 (1978)) (other citations omitted).

#### B. Application

##### 1. Individuals

**\*3** Plaintiff's complaint is a rambling description of reasons
why he and his family are frustrated with the City of Rome,
the "loss" of 105 Fourth St., and apparently with the fact that
their "case" is not moving fast enough. The court must point
out that plaintiff and his family moved out of 105 Fourth
St. in June of 2014, prior to the filing of 15-CV-734, and
Mr. Schisler's current complaint does not mention any of the
current defendants in the body of the complaint. There is
absolutely no indication that any of the current individual
defendants had any involvement in refusing to turn the water
off in July of 2014, the only specific incident that appears to
be the subject of plaintiff's rambling complaint.

It is unclear how the current common council president
or the current mayor would have had any involvement in
anything that plaintiff alleges in this complaint. Former
Mayor of Rome, Joseph Fusco, was dismissed as a defendant
in 15-CV-734, even when plaintiff attempted to make some
specific claims against him regarding the "loss" of 105 Fourth
St. (Dkt. No. 12 in 15-CV-734 at 11-12). The action was
dismissed with prejudice against Mayor Fusco after plaintiff
was given an opportunity to amend his complaint and had
failed to do so. In the current complaint, Mr. Schisler has
failed to even mention former Mayor Fusco in the body of
the complaint. Not even the most liberal reading of this
complaint would state any constitutional claims against any

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

of the individual defendants.[3] Thus, plaintiff may not sue the current mayor, Jackie Izzo, the former mayor, Joseph Fusco, Jr., or the Rome Common Council President, Stephanie Viscelli.

[3]    The court has interpreted the plaintiff's claims to raise the strongest arguments that they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

### 2. City of Rome

In the complaint, plaintiff describes one incident, which occurred in July of 2014, after his family moved out of 105 Fourth St. Plaintiff alleges that on July 3, 2014, his wife called to ask for the water to 105 Fourth St. to be shut off, but was told by an unidentified individual, that she could not have the water shut off because she did not own the house. However, plaintiff states that he and then-Ms. Dow, owned the house together, and that she did have the authority to request this action. Plaintiff does not allege that there were any adverse consequences to this action.

In any event, plaintiff is not challenging a "policy," he is stating that an unidentified city employee was incorrect in determining that plaintiff's wife was not authorized to have the water to 105 Fourth St. shut off.[4] Then plaintiff discusses the "power," but only states that the power was "on." (Compl. at 3-4). There is no basis in this complaint to establish municipal liability, and the complaint may be dismissed as against the City of Rome.

[4]    The court notes that plaintiff states that his wife called about the water on July 3, 2014, and then states that either one of them could have asked to shut the water off, but then states: "with them failing to shut water off during the very cold winter when we could not get there to Rome and check on our belonging [sic] or home." (Compl. at 3). Clearly, July is several months prior to the "winter," and plaintiff makes no connection between his wife's telephone call and any damages that may have occurred during the "winter" because the water was not turned off in July. Nor does he indicate why he did not call the City to have them shut the water off between July and the

"winter." In fact, plaintiff never mentions what, if any, damage to their property the family sustained due to the unnamed individual's actions. Clearly, even assuming that there was some damage, it was not due to an alleged "policy" of the City of Rome.

### IV. "Causes of Action"

#### A. Negligence

**\*4** Plaintiff's first cause of action is for "Negligence in assisting in protecting a handicap [sic] individuals [sic] property and home." Plaintiff's frustration with the way he was "negligently" treated by the City of Rome or its unidentified employees may not be the subject of a section 1983 action regardless of the official who plaintiff names. *D. v. City of New York*, No. 14 Civ. 7131, 2016 WL 4734592, at *4 (S.D.N.Y. Aug. 22, 2016) (citing inter alia *City of Sacremento v. Lewis*, 523 U.S. 833, 849 (1988) (liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process)). In any event, a careful reading of the complaint shows that plaintiff never alleges any damage to 105 Fourth St. which occurred as the result of "negligent" behavior by any defendant. The court can only assume that plaintiff is trying to say that defendants were "negligent"—in failing to help in "protecting" plaintiff's property. Plaintiff does not claim any damage to his property as the result of any defendant's actions, and if he is still referring to the alleged "loss" of 105 Fourth St., that is the subject of 15-CV-734. Thus, plaintiff's attempt at stating a a a cause of action for negligence fails, and plaintiff's first cause of action must be dismissed.

#### B. Intentional Infliction of Emotional Distress

There is no recognized claim for intentional infliction of emotional distress under section 1983. *Watson v. Doe*, No. 1:15-CV-1356, 2016 WL 347339, at *32 (N.D.N.Y. Jan. 28, 2016). Intentional infliction of emotional distress is a state law claim that could only be brought in federal court if the court exercised supplemental jurisdiction, which is available if there is an underlying federal or constitutional claim to which the state claim is "supplemental." *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("if Matican has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims").

Because plaintiff in this case has not stated a constitutional claim, there is no reason to exercise supplemental jurisdiction over a vague claim of emotional distress, which may be

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

referring to actions that are the subject of another law suit. As stated above, plaintiff is already suing the City of Rome and individuals in their official capacity in 15-CV-734 for incidents relating to the "loss" of 105 Fourth St., due to the alleged failure of the defendants in 15-CV-734 to allow plaintiff and his wife to obtain a permit to build a driveway so that he and his family could better access the home. [5]

[5] The court notes that 15-CV-734 is proceeding based on the claim that plaintiffs were discriminated against based on their disability under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., not based on section 1983 jurisdiction. (Dkt. No. 20 in 15-CV-734, *recon. denied*, Dkt. No. 26, *appeal dismissed*, Dkt. No. 31 (2d Cir. July 18, 2016)).

This complaint also refers to incidents that relate to 105 Fourth St. The only incident to which plaintiff refers in this complaint relates to his wife calling the City of Rome to request the water to be shut off. An employee's refusal to shut off water based on a perceived lack of the caller's authority, cannot be the subject of a claim of intentional infliction of emotional distress by this plaintiff. Plaintiff's frustration and vague complaints about other incidents that may have also caused him stress are not the subject of a section 1983 action. Conclusory allegations are insufficient to state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). Thus, this case may be dismissed for failure to state a claim. [6]

[6] Plaintiff is apparently frustrated with the legal system. However, this court notes that some of the delay that plaintiff is experiencing in 15-CV-734 is due to the efforts made to find a defendant that plaintiff did not properly identify, an "interlocutory appeal" to the Second Circuit in April of 2016 that was dismissed by that court, and now another interlocutory appeal to the Second Circuit of a text order that I issued on February 17, 2017. (Dkt. Nos. 61-63 in 15-CV-734).

## V. Opportunity to Amend

### A. Legal Standards

**\*5** Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any

amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

This court does not find that plaintiff could amend his complaint in any way to allege a constitutional claim based on the facts that he has stated in this complaint against the current defendants who he has named. [7] To the extent that plaintiff seeks to sue defendant Fusco over 105 Fourth St., plaintiff has already had an opportunity to amend to state a claim against the former mayor and failed to do so in 15-CV-734. (*See* Dkt. No. 12 in 15-CV-734 at 12-13, *adopted* Dkt. No. 14). Thus, the court should not afford plaintiff another opportunity to do so. Thus, I will recommend dismissal of the entire complaint without opportunity to amend.

[7] Plaintiff and his wife have filed multiple actions in the Northern District of New York, most of which have been dismissed. *Schisler v. Rizio*, No. 6:14-CV-793 (GTS/TWD), dismissed Oct. 16, 2014; *Schisler v. Fusco*, No. 6:14-CV-794 (GTS/TWD), dismissed Dec. 16, 2014; *Schisler v. Rizio*, No. 15-CV-1122 (TJM/ATB), dismissed May 23, 2016; *Schisler & Dow v. M & T Bank*, No. 6:16-CV-514 (DNH/TWD) (dismissal recommended on May 24, 2016) (objections filed —currently open); *Schisler v. Thomas*, No. 6:16-CV-1051 (GLS/ATB), dismissed Nov. 19, 2016; *Schisler v. Utica Police Dep't*, No. 6:16-CV-1051 (dismissal with prejudice recommended on Sept. 9, 2016) (objections filed—currently open); *Schisler v. James Cars of Rome*, No. 6:16-CV-1382 (GTS/ TWD) (dismissed Dec. 22, 2016).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for IFP (Dkt. No. 2) be **GRANTED FOR PURPOSES OF FILING ONLY**. and it is

**RECOMMENDED**, that the plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)**
2017 WL 1418296

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1418296

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1411533

2017 WL 1411533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William G. SCHISLER, Sr., Plaintiff,

v.

CITY OF ROME; Jackie Izzo, Mayor; Joseph R.
Rusco, Jr., Former Mayor (Rome); and Stephanie
Viscelli, Rome Common Council Pres., Defendants.

6:17-CV-0312 (GTS/ATB)
|
Signed April 10, 2017
|
Filed 04/20/2017

**Attorneys and Law Firms**

WILLIAM G. SCHISLER, SR., 908 Stark Street, Utica, New
York 13502, Pro Se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District
Judge

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by William G. Schisler, Sr., ("Plaintiff") against
the City of Rome, current and former mayors of Rome, and
president of the Rome Common Council ("Defendants"), is
United States Magistrate Judge Andrew T. Baxter's Report-
Recommendation recommending that Plaintiff's Complaint
be *sua sponte* dismissed with prejudice for failure to state
a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Dkt.
No. 4.) Plaintiff has not filed an objection to the Report-
Recommendation, and the deadline in which to do so
has expired. (*See generally* Docket Sheet.) After carefully
reviewing the relevant papers herein, including Magistrate

Judge Baxter's thorough Report-Recommendation, the Court
can find no clear-error in the Report-Recommendation: [1]
Magistrate Judge Baxter employed the proper standards,
accurately recited the facts, and reasonably applied the law
to those facts. As a result, the Report-Recommendation is
accepted and adopted in its entirety for the reasons set forth
therein, and Plaintiff's Complaint is *sua sponte* dismissed
with prejudice for failure to state a claim pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(ii).

[1]     When no objection is made to a report-
        recommendation, the Court subjects that report-
        recommendation to only a clear error review. Fed.
        R. Civ. P. 72(b), Advisory Committee Notes: 1983
        Addition. When performing such a "clear error"
        review, "the court need only satisfy itself that there
        is no clear error on the face of the record in order to
        accept the recommendation." *Id.*; *see also Batista
        v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
        (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
        permitted to adopt those sections of [a magistrate
        judge's] report to which no specific objection is
        made, so long as those sections are not facially
        erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-
Recommendation (Dkt. No. 4) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua
sponte* **DISMISSED with prejudice** for failure to state a
claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1411533

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 125769

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 77 of 81

2019 WL 125769
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

1:18-CV-1259 (LEK/ATB)
|
Signed 01/07/2019

**Attorneys and Law Firms**

Clarence DeLaney, Jr., Albany, NY, pro se.

**DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

 *1 This matter comes before the Court following a Report-Recommendation filed on November 13, 2018, by the Honorable Andrew T. Baxter, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 7 ("Report-Recommendation").

**II. BACKGROUND**

Beginning in May 2016, plaintiff Clarence Delaney, Jr. received a number of phone calls from defendant Detective DiGiuseppe of the Albany Police Department, asking to meet with Plaintiff for "questioning" about an investigation into a "minor crime 'that was no big deal.' " Dkt. No. 1 ("Complaint") at 4. DiGiuseppe declined to discuss details of the investigation over the phone. Id. Plaintiff eventually, in July 2016, "agreed to meet with Detective DiGiuseppe" at the Veterans Affairs ("VA") Center in Massachusetts, where Plaintiff lived and volunteered. Id. at 5.

Plaintiff was waiting on a bench outside the VA Center when DiGiuseppe and another, unknown detective, John Doe, arrived for the meeting. Id. Plaintiff "was told to put his hands on top of his head and [was] then searched by the two [detectives]." Id. Then, Plaintiff was "ordered to get in the unmark[ed] police car of Detective DiGiuseppe." Id. at 6. Plaintiff was in the back seat, next to Doe. Id. DiGiuseppe then "interrogated" Plaintiff about a credit/debit card that

was used in a $48 purchase at a Stewart's convenience store in Albany. Id. Plaintiff told DiGiuseppe that "he would like a lawyer present," id., but DiGiuseppe "refuse[d] to let [Plaintiff] out of the vehicle" and "continued to question" him. Id. Plaintiff "refused to answer and began to exercise his right to remain silent." Id. Plaintiff was finally released out of the car, and the detectives advised him that they would be "back at some point." Id. However, charges related to this credit/debit card were "never pursued." Id. at 7.

In this 42 U.S.C. § 1983 civil rights action, pro se Plaintiff has brought claims against DiGiuseppe and Doe for excessive force, false arrest, false imprisonment, unreasonable search, intentional infliction of emotional distress ("IIED"), and official misconduct. Id. at 7. He has also brought a claim against the City of Albany for failure to train its officers. Id. The Magistrate Judge recommends dismissing the entire Complaint, with prejudice, primarily on the basis that Plaintiff consented to the police encounter. R. & R. at 6, 8, 10, 13.

**III. LEGAL STANDARD**

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b). However, if no objections are made, a district court need review the report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

**IV. DISCUSSION**

 *2 No objections were filed in the allotted time period. Docket. Accordingly, the Court has reviewed the Report-Recommendation for clear error. The Court has found clear error in the Magistrate Judge's assessment of Plaintiff's claims for false arrest/imprisonment, unreasonable search, and IIED, as well as his recommendation to dismiss Plaintiff's other claims with, as opposed to without, prejudice. The Court adopts the Report-Recommendation except with regard

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 125769

to those issues. Plaintiff's false arrest, false imprisonment, and unreasonable search claims survive against detectives DiGiuseppe and Doe. All of Plaintiff's other claims are dismissed without prejudice.

### A. False Arrest and Imprisonment
Plaintiff asserts false arrest and false imprisonment claims against both detectives. Compl. at 6–7.

#### 1. Legal Standard

In New York, the tort of false arrest is synonymous with false imprisonment. Jacques v. Sears, Roebuck & Co., 285 N.E.2d 871, 875 (N.Y. 1972); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). For ease of reference, the Court will use the term false arrest. A federal claim for false arrest premised on the Fourth Amendment right to be free from unreasonable seizures is "substantially the same" as a false arrest claim under New York law, save for § 1983's requirement that the constitutional tort be under color of state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest in New York, a plaintiff must show that: (1) the defendants intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not justified or privileged. Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975).

Confinement in this context means "seized." Fincher v. Cty. of Westchester, 979 F. Supp. 989, 999 (S.D.N.Y. 1997). A person is confined, and therefore seized within the meaning of Fourth Amendment "if, in view of all of the circumstances surrounding the [encounter], a reasonable person would have believed that he [or she] was not free to leave." United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990). The restraint of liberty may be "by means of physical force or show of authority." Bostick, 501 U.S. 429, 434 (1991). The test is an objective one, based on how a reasonable innocent person would view the encounter.

The scope of a Plaintiff's consent, as relevant to the third Broughton prong, depends on " 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Consensual contact, even without any reason to suspect criminal behavior, does not amount to a "seizure" implicating the Fourth Amendment's

protections. Id. To be valid, consent be "a product of that individual's free and unconstrained choice ... rather than a mere acquiescence in a show of authority." United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993). Once given, consent may be withdrawn, but an intent to withdraw must be made by unequivocal act or statement. United States v. Schaefer, 859 F. Supp. 2d 397, 410 (E.D.N.Y. 2012), aff'd 519 F. App'x 71 (2d Cir. 2013).

As to the fourth Broughton prong—whether the confinement was justified or privileged—a court must assess whether the seizure constituted (1) merely a brief investigative stop, which requires a justification of only reasonable suspicion; or instead (2) an arrest, which requires probable cause. Posr, 944 F.2d at 98.

Although limited in scope, brief investigative stops, or so-called Terry stops, are "seizures," as delineated in Terry v. Ohio, 392 U.S. 1 (1968). U.S. v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). Terry stop seizures must be based on a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). Reasonable suspicion requires that the officers be aware of "specific articulable facts" that, together with rational inferences from those facts, "reasonably warrant suspicion" that the individual was engaging in, or was about to become engaged in, criminal activity. United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). The requisite level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." Glover, 957 F.2d at 1009. Whether a set of facts gives rise to a reasonable suspicion depends on the totality of the circumstances, United States v. Arvizu, 534 U.S. 266, 273 (2002), and the analysis is "exceedingly fact-specific," Hernandez v. City of Rochester, 260 F. Supp. 2d 599, 607 (W.D.N.Y. 2003).

*3 The other type of Fourth Amendment seizure, an arrest, must be justified by the higher standard of probable cause. Glover, 957 F.2d at 1008. The Second Circuit has identified the following factors to be considered in determining when a seizure ripens into a de facto arrest:

> [T]he amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such facts as the

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 125769

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 79 of 81

> number of agents involved, whether
> the target of the stop was suspected
> of being armed, the duration of the
> stop, and the physical treatment of
> the suspect, including whether or not
> handcuffs were used.

United States v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004).

### 2. Analysis

The Magistrate Judge dismissed Plaintiff's false arrest claim on the basis of the third prong, finding that Plaintiff "consented" to the encounter with the detectives. R. & R. at 6. The Magistrate erred in so finding. Plaintiff does allege that he "agreed to meet with Detective DiGiuseppe" at the VA Center. Compl. at 5. But the interaction there exceeded the scope of Plaintiff's consent. A reasonable person would not have understood Plaintiff's agreement to meet with detectives in a public place as his consent to be held in a police car despite requests to exit. And even if Plaintiff had initially consented to be in the vehicle, Plaintiff's requests to exit the vehicle would have withdrawn such consent. See Hall v. City of White Plains, 185 F. Supp. 2d 293, 299 (S.D.N.Y. 2002) (finding no consent, but rather an investigative detention, where officers refused plaintiff's request to leave).

Having found that the Magistrate Judge's dismissal was founded in error, the Court must now analyze the remaining three Broughton prongs to fully evaluate his allegations under 28 U.S.C. § 1915. The Court finds that Plaintiff's alleged interaction with the detectives satisfies the first two prongs of a false arrest claim, in that the interaction constituted a confinement, or seizure, of which Plaintiff was aware. Two detectives "ordered" Plaintiff to put his hands on his head and get into the police car. Compl. at 6. He was searched, and was unable to "terminate the encounter," because the detectives "refuse[d]" to let him out of the vehicle. Id. Further, the detectives' behavior—most notably, their ordering Plaintiff into the car and refusing to let him leave—conveyed a message that compliance with their requests was required. A person in such circumstances would not have felt "free to leave." See Hall, 185 F. Supp. 2d at 299. Thus, the detectives "by means of physical force or show of authority ... restrained the liberty" of Plaintiff, Bostick, 501 U.S. at 434, such that "a reasonable person would [not have] fe[lt] free to decline

the officers' requests or otherwise terminate the encounter." Id. at 436.

The Court also finds that the fourth false arrest prong is satisfied in Plaintiff's case. At the least, Plaintiff has alleged an interaction constituting a seizure.[1] Under the fourth false arrest prong, the detectives needed at least reasonable suspicion to justify the encounter. Sokolow, 490 U.S. at 7. Here, where charges were "never pursued," Compl. at 7, drawing all reasonable inferences in Plaintiff's favor, and exercising "extreme caution" in ordering sua sponte dismissal, Anderson v Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), the Court finds that Plaintiff has plausibly alleged that there was no reasonable suspicion of criminal activity that would have justified the seizure. See Terry, 392 U.S. at 27 (finding that an officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity).

[1]     Whether the alleged interaction constituted a de facto arrest (requiring probable cause) as opposed to a mere Terry stop seizure is a closer question, which the Court need not decide at this point. The alleged lack of reasonable suspicion makes the interaction unjustified, whether it constituted an arrest or Terry stop.

**\*4** Accordingly, Plaintiff's false arrest and false imprisonment claims against DiGiuseppe and Doe survive.

### B. Unreasonable Search

While Plaintiff does not explicitly state a separate cause of action for the detectives' search of his person, he describes the circumstances of that search. The Court therefore deems Plaintiff to have alleged an unreasonable search contrary to the Fourth Amendment's protections. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (instructing that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests).

Whereas a Terry stop is justified by reasonable suspicion that criminal activity may be afoot, a search, or frisk, of a person for weapons requires a reasonable suspicion that a suspect "is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24; see also Ybarra v. Illinois, 444 U.S. 85, 93–94 (1979). Even if a stop is justified, an associated frisk is not necessarily justified. United States v. Oates, 560 F.2d 45, 61 (2d Cir. 1977). Where officers have

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 125769

reasonable suspicion that the suspect has committed, or is about to commit, a violent or dangerous crime, the suspicion necessary to justify a stop ordinarily justifies a frisk as well. See Wayne R. Lafave, 4 Search & Seizure § 9.6(a) nn. 55–61 (5th ed. 2014) (collecting cases). But where the suspect is stopped for a non-dangerous offense, the officers need independent, reasonable suspicion to believe that he is armed and presently dangerous. Id. at nn. 63–76 (collecting cases).

The Magistrate Judge did not analyze the search as a separate claim. Instead, he seems to have understood the entire interaction between Plaintiff and the detectives as consensual, obviating the need for any reasonable suspicion. R. & R. at 6, 8, 10, 13. The Magistrate Judge erred in his assessment of consent with regard to the search. Simply by agreeing to meet and speak with detectives in a public place, an individual does not consent to a frisk. See United States v. Floyd, 99-CR-234, 1999 WL 673050, at *5 (SDNY Aug. 30, 1999) (finding frisk non-consensual where officers surrounded friskee, who would not feel free to leave). There is no mention in the Complaint that the detectives asked for consent before frisking Plaintiff; rather, immediately upon the detectives' arrival, they "told" Plaintiff to put his hands on top of his head and then searched him. Compl. at 5.

As the search was nonconsensual, the detectives needed reasonable suspicion that Plaintiff was armed and dangerous. Terry, 392 U.S. at 24. Here, Plaintiff agreed in advance to meet with the detectives in a public place, and the underlying criminal suspicions apparently related to only the non-violent use of someone else's credit card at a convenience store months prior. Those circumstances do not give rise to the reasonable suspicion of weapons and danger required by Terry, meaning that the detectives' frisk violated Plaintiff's Fourth Amendment rights. See United States v. Jackson, No. 15-CR-106, 2015 WL 4557401, at *7 (S.D.N.Y. July 29, 2015) (finding frisk unlawful where stop was justified by suspicion of non-dangerous offense). Accordingly, Plaintiff's unreasonable search claim against Doe and DiGuiseppe survives.

### C. Intentional Inflection of Emotional Distress

**\*5** The Magistrate Judge recommended dismissal of Plaintiff's state law IIED claim for lack of supplemental jurisdiction, since he had already recommended dismissing all of Plaintiff's federal claims. R. & R. at 9–10. Having found that Plaintiff's Fourth Amendment claims do survive, the Court nevertheless dismisses the IIED claim on different grounds.

The New York Court of Appeals "has cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.' " Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 159 (2d Cir. 2014) (quoting Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978) ); see also Lopez v. City of New York, No. 14–CV–1660, 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014) ("New York law considers IIED a theory of recovery that is to be invoked only as a last resort, and requires dismissal of an IIED claim based on conduct that falls within the ambit of other tort liability."

The conduct of which Plaintiff complains falls within the ambit of his claims for false arrest and unreasonable search; accordingly, the Court dismisses the related IIED claim. See Murphy v. City of Rochester, 986 F. Supp. 2d 257, 271 (W.D.N.Y. 2013) (holding that "the allegedly outrageous conduct complained of by [the plaintiff] falls within the scope of the other traditional torts he has pleaded (i.e., false arrest; malicious prosecution; abuse of process; ... and defamation by libel and slander)"); Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) (holding that, because "the alleged conduct fits well within the traditional tort theories of false arrest, malicious prosecution, and assault and battery[,] ... the claim of intentional infliction of emotional distress will not fly").

### D. Detective John Doe

Service of process cannot be effected on Doe until he has been identified by name. Therefore, if Plaintiff wishes to pursue his claim against Doe, he must take reasonable steps to ascertain his identity through discovery. Upon learning the identity of Doe, Plaintiff must amend the Complaint to properly name him. If Plaintiff fails to ascertain the identity of Doe in a timely manner, the claim against him will be dismissed. See Pravda v. City of Albany, 178 F.R.D. 25, 26 (N.D.N.Y. 1998) (dismissing a plaintiff's claims against John Doe and Jane Roe defendants after "Plaintiff ha[d] been given over two years to identify and serve th[o]se individuals, including the full discovery period"); Reed v. Doe, No. 11-CV-250, 2015 WL 902795, at *5 (N.D.N.Y. Mar. 3, 2015) (dismissing a plaintiff's claim against a John Doe defendant after the plaintiff "failed to ... take timely measures reasonably calculated to ascertain the [John Doe's] identity").

### E. Dismissal without prejudice

Case 5:24-cv-00573-DNH-TWD    Document 5    Filed 06/11/24    Page 81 of 81

The Magistrate Judge recommended dismissal of all of Plaintiff's claims, save the IIED claim, with prejudice. R. & R. at 12–14. However, "District courts generally should not dismiss a pro se complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " Yong Chul Son v. Chu Cha Lee, 559 F. App'x 81, 83 (2d Cir. 2014). "Leave to amend is not necessary, however, when it would be futile." Id. (affirming dismissal of a pro se complaint without requiring an opportunity to amend). The Magistrate Judge erred in finding that any amendment to Plaintiff's complaint would be "futile." Accordingly, the Court dismisses without prejudice those claims not revived by this Decision and Order, meaning Plaintiff may restate those claims in an amended complaint, if accepted for filing.

**V. CONCLUSION**

*6 Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 7) is **APPROVED and ADOPTED, except as to Plaintiff's false arrest, false imprisonment, unreasonable search, and IIED claims**; and it is further

**ORDERED**, that Plaintiff's Fourth Amendment claims for false arrest, false imprisonment, and unreasonable search against Detectives DiGiuseppe and Doe **SURVIVE initial review**; and it is further

**ORDERED**, that all other claims brought by Plaintiff, including all claims brought against the City of Albany, are **DISMISSED without prejudice**; [2] and it is further

[2]    If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised that, if accepted for filing, any amended complaint will entirely replace the original Complaint.

**ORDERED**, that the Clerk shall issue a summons and forward it to the U.S. Marshal for service of process upon DiGiuseppe. The Clerk shall forward a copy of the summons and the Complaint by mail to the City of Albany Corporation

Counsel, together with a copy of this Decision and Order; and it is further

**ORDERED**, that once Plaintiff identifies Doe, he must amend the operative pleading to properly name him; and it is further

**ORDERED**, that once Plaintiff files an amended pleading identifying Doe by name, the Clerk shall issue a summons and forward it to the U.S. Marshal for service of process upon Doe. The Clerk shall forward a copy of the summons and the amended pleading by mail to the City of Albany Corporation Counsel; and it is further

**ORDERED**, that a response to the Complaint shall be filed by remaining Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on Plaintiff, together with a copy of the original Complaint.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 125769

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.